SAMUEL BEST *et al.*

*v.*

LORENZO Y. JENKS *et al.*

*Filed at Mt. Vernon January 20, 1888.*

1. PARTITION BY PAROL—*as vesting title—limitation.* A parol partition of one hundred and fifty acres of land was made between a brother and sister, which was acquiesced in by all the parties interested therein. The sister took possession of the part assigned to her, in 1845, but afterward sold twenty acres. From 1845, to her death, in 1880, (a period of thirty-five years,) she claimed to be the owner of the fifty-five acres, and occupied the premises in pursuance of the parol partition: *Held*, that she was the owner of the same at her death, and that her husband was entitled to dower in the same.

2. DOWER—*whether subject to sale and transfer before assignment.* The right of dower is a mere intangible, inchoate, contingent expectancy, and until assigned it is no estate in the land, but is a right existing in action only, and it can not be aliened. It may be released in favor of the owner of the fee, but it can not be invested in another separately from the fee. Only the person entitled to dower under the law, can have it assigned.

3. SAME—*sale on partition, by consent—who may give the consent.* Pending a suit for the partition of land, the party entitled to dower and homestead, who was also an heir to one-half of the land, sold and conveyed to a third person all his interest in the premises, and the latter was made a party complainant. After a decree for partition, and the report that the dower and homestead could not be set off or partition made, the purchaser filed his written consent to the sale of the dower and homestead interest, and agreed to take the value thereof in money, and an order was made for a sale free of the dower: *Held*, that the order of sale was erroneous. The purchaser having no title to the dower, his written consent could not oper-

ate to give the purchaser at the master's sale a title free from the dower. The party entitled to dower by law, alone could give such consent.

4. HOMESTEAD—*whether alienable before assignment—right of grantee to have the homestead set off to him.* A husband or wife can not convey, by deed to a third person, his or her estate of homestead in premises the fee of which is in the heirs, before the homestead has been assigned or set off, so as to vest such third person, grantee in the deed, with the right to have the homestead set off and assigned to him. Such right or estate attaching in favor of a surviving husband or wife, in premises the fee of which is owned by the heirs, is not the subject matter of lease or conveyance before the homestead has been set off and assigned.

5. A wife died seized of a tract of land occupied by her and her husband as a homestead, leaving no descendants, whereby the husband inherited one-half of the property, and the other half descended to her collateral heirs, subject to her husband's dower. After filing a bill for the assignment of his dower and homestead, and for partition, the husband sold and conveyed all his right, title, interest and estate in the land to a third person, who was made a party complainant. The deed released all the grantor's rights under the homestead laws: *Held,* that neither the husband nor his grantee had any right to have a homestead set off to him, as the homestead in one-half of the land became merged in the fee, and as it was released in the deed, it could not be asserted against the other heirs. Before assignment, the homestead can not be released or transferred in parcels. The estate of homestead is an entirety.

6. Section 37 of the Dower act does not authorize the allotment of dower and homestead in a case where the homestead premises are owned by a third person, and not by the surviving husband or wife.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

This is a bill for partition and assignment of dower and homestead filed in the circuit court of St. Clair county on July 25, 1880, by the appellee Jenks, as complainant, against the appellants, as defendants. The bill alleges that said complainant, Jenks, was married to Susan Best in 1856 and lived with her as her husband until her death; that his said wife, Susan Best, died intestate and without children in March, 1880, leaving, as her only heirs-at-law, her husband, the complainant; her half-sister Caroline Lemen, (formerly Caroline

Hogan); her nephews, Samuel Best and Albert Best, and her niece, Ann Smith, wife of James Smith (formerly Ann Best), being the three children of her deceased brother of the whole blood, John Best; her niece, Lilly Hogan, and her nephews, John, Russell, Edward and Ray Hogan, being all minors and the five children of her deceased brother of the half-blood, James Hogan; her nephews and nieces, James, Samuel, Cynthia, Larkin D., Mary and Rosetta Hogan, being the six children of her deceased brother of the half-blood, Larkin Hogan, and the last three being minors; that the said Susan Jenks was seized in fee, at the time of her death, of the fifty-five acres of land, sought to be partitioned, and had been the owner of the same before her marriage with complainant; that she was a householder, had a family and occupied and resided on the fifty-five acres as her homestead and had an estate of homestead therein; that complainant has resided and still resides thereon as his homestead and claims homestead therein; that complainant is entitled to one-half of the premises in fee simple as heir of his wife, and to dower and homestead in the other half, as her surviving husband; that Caroline Lemen is entitled to one-eighth of the premises, the children of John Best to one-eighth thereof, the children of James Hogan to one-eighth thereof and the children of Larkin Hogan to one-eighth thereof, all their interests, however, subject to dower and homestead. The bill makes the heirs as above named, together with Harriet Hogan, widow of James Hogan, and Caroline Hogan, widow of Larkin Hogan, parties defendant, and prays for partition according to the interests as above set forth and for assignment of dower and homestead, etc. The defendants to the bill in the court below are the appellants here.

On September 20, 1880, Isaac W. Lemen filed a petition praying to be made complainant and setting up, that the complainant Jenks had, on August 31, 1880, deeded to petitioner all his (Jenks') interest in the premises so far as he might, and that petitioner was solely interested therein.

On June 27, 1881, Caroline Lemen filed an amended answer and a further amendment thereto on October 3, 1882, therein admitting the heirship and marriage of Susan Jenks, as alleged in the bill, but denying that she was the owner of the fifty-five acres at her death or before her marriage, denying also the interests of the defendants as alleged in the bill, or that Susan in her lifetime or Jenks after her death had a homestead in the premises, etc., and averring, that Samuel Best, who died in 1815, leaving a widow Ann Best, was the father of John Best and Susan Best (afterwards Susan Jenks); that Ann Best, the widow, married Patrick Hogan, by whom she had three children, James, Larkin, and Caroline Hogan above named; that the said Ann Hogan, mother of Susan Jenks died intestate on June 23, 1872, and was at the time of her death the owner in fee of the fifty-five acres; that, by her death, her children and grandchildren inherited the following interests in the premises, Susan Jenks and Caroline Lemen, each one-fifth, and the children of John Best one-fifth, the children of James Hogan one fifth, the children of Larkin Hogan one-fifth; that Susan Jenks at the time of her death on March 2, 1880, only owned one-fifth of said premises, one-half of which descended to her sister and the children of her brothers subject to the rights therein of her husband, etc.

The answers of the other heirs are substantially the same as that of Caroline Lemen. Caroline Lemen and Lilly Hogan filed a cross-bill praying for partition, etc., according to the interests as set up in the answers. Replications were filed to the answers to the original bill; the cross-bill was answered by Jenks and Isaac W. Lemen, and replication was filed to their answer.

The circuit court made a decree granting relief in accordance with the prayer of the original bill and the petition, and dismissed the cross-bill. From this decree, which was entered at the September term, 1884, the defendants to the original bill prayed an appeal to the Supreme Court, which appeal was allowed.

The decree so entered at the September term, 1884, finds and decrees, among other things, as follows: "That Lorenzo Y. Jenks, at the time of his conveyance aforesaid, was entitled to a right of homestead to the value of $1000 in said fifty-five acres; that he conveyed all his right, title and interest in said fifty-five acres aforesaid to Isaac W. Lemen, and that by said conveyance, said Lemen then and there became seized of the one undivided one-half of said fifty-five acre tract, in fee simple; also to right of homestead of the value of $1000 in said fifty-five acre tract; * * * that said Lemen is entitled to and to have set off and allotted to him a homestead of the value of $1000 in said fifty-five acre tract; that the share of said Lemen's portion of said fifty-five acres contribute one-half of the value of said homestead, and that the shares of the defendants contribute the other half of the value of said homestead; that Jenks be endowed of one undivided one-half of said fifty-five acres of which the defendants are seized in fee simple, as herein set forth; and the court appoints commissioners, directing that they first take the oath required, and then go on said fifty-five acre tract, and if the same is susceptible of division, set off and allot to Lemen a homestead, by metes and bounds, to the value of $1000; and next set off and allot to Jenks his dower in that portion of said land which defendants in the original bill are seized of respectively, as set forth by metes and bounds, according to quantity and quality of said premises, as they may deem best for all parties, after the dower and homestead have been set off and allotted, and make division of the remainder of said fifty-five acre tract, by metes and bounds, to each of the parties, according to their interests, respectively; and if they find the premises not susceptible of division without prejudice to the parties interested, and find dower and homestead can not be set off without prejudice to parties interested, then that they value such lands, and that they make report of their doings in the premises to the next term of court."

At the May term, 1886, the commissioners reported that dower and homestead could not be set off and partition could not be made without manifest prejudice, etc., which report was approved.

November, 1886, Lemen, the purchaser of said tract, filed his consent to the sale of his dower and homestead interest, and to take the value thereof in money, to be fixed by the court; consent approved, and court ordered said lands sold at public sale, not to sell for less than two-thirds of their appraised value, sale on premises, one-third to be paid in cash, sale to conform to statute, and pay over moneys, etc., according to respective interests of parties, and report same. Whereupon Caroline Lemen and Lilly Hogan prayed an appeal, which was allowed by the court.

Mr. LEWIS W. HAMMACK, Mr. M. W. WIER, and Mr. E. H. LEMEN, for the appellants:

The right of dower is a mere intangible, inchoate, contingent expectancy, and until assigned is no estate in the land, but is a right existing in action only, and it can not be aliened. *Seymour* v. *Minturn*, 17 Johns. 167; *Jackson* v. *Aspill*, 2 id. 412.

A widow can not lease her dower before it is assigned, even to the owner in fee. *Blain* v. *Harrison*, 11 Ill. 386.

The same rule should apply as to homesteads, as each is a personal right, and can not be enforced by any other person than the party entitled by the law. When Jenks conveyed to Lemen, his right to dower and homestead was merged in the fee, and neither Jenks nor Lemen is entitled to have either dower or homestead assigned in the lands.

Concerning the possession, the rule of law is, that "where two or more occupy land, claiming title, the possession follows the title in law." Tyler on Ejectment, 904, 905.

The court erred in allowing Jenks, husband of Susan and heir-at-law, to testify, on his own motion, in his own behalf. Rev. Stat. chap. 51, sec. 2.

Messrs. Dill & Schaefer, for the appellees:

The court did not decree to Lemen dower in the land, but to Jenks.   The dower was properly decreed to Jenks.   This estate, like any other, passed to Lemen under Jenks' warranty deed.

The homestead was properly decreed to Lemen.   Homestead is not a mere right of occupancy; on the contrary, it is an estate, and like other estates it is the subject of conveyance. Alienation does not constitute an abandonment.   *Plummer* v. *White*, 101 Ill. 474; *Rock* v. *Haas*, 110 id. 528.

Jenks is a competent witness.   *Pigg* v. *Carroll*, 89 Ill. 207.


Mr. Justice Magruder delivered the opinion of the Court:

Appellees claim, that, when Susan Jenks died, she owned the whole of the tract of fifty-five acres; appellants claim that at that time she only owned one undivided one-fifth part of the tract.

March 9, 1812, Nicholas Jarrot and his wife, then of St. Clair county in the territory of Illinois, conveyed a tract of four hundred acres of land to Ann Simpson and Samuel Best, "their heirs and assigns forever."   Samuel Best died intestate August 22, 1815; Ann Simpson died testate February 2, 1827.   Ann Best, widow of Samuel Best, and who afterwards married Hogan, was the daughter of Ann Simpson.   During the lifetime of Samuel Best, he and Ann Simpson conveyed one hundred acres off of the east side of the four hundred acres to one Kinney, so that, when Samuel Best died, only three hundred acres remained.

Appellants insist that the deed from Jarrot and wife vested the title to the four hundred acres, under the law as it then existed, in Ann Simpson and Samuel Best, *as joint tenants* and *not* as tenants in common; that, upon the death of Samuel Best in 1815, Ann Simpson became the owner of the three hundred acres, then remaining, by survivorship.   By her will,

dated October 31, 1826, Ann Simpson gave and bequeathed to her "son, William H. Simpson, the south half of the land whereon I now live, having heretofore deeded the same to him, * * * his heirs and assigns;" she therein gave to her "daughter, Ann Hogan, her heirs and assigns, the north half of the tract of land whereon I now live, with, all and singular, the appurtenances thereunto belonging."

The position of the appellants is, that the land referred to in the will was the tract of three hundred acres, which Ann Simpson then owned as survivor of Samuel Best, and that, by her will, the south half thereof, containing one hundred and fifty acres, went to William H. Simpson, and the north half thereof, containing one hundred and fifty acres, went to Ann Hogan. The fifty-five acres are situated in the north half of the north half of the three hundred acres. Ann Hogan died intestate on June 23, 1872. Appellants insist, that Ann Hogan owned all of the fifty-five acres, as devisee under her mother's will, and that, by her death, her daughter Susan Jenks inherited one-fifth thereof and never owned any greater interest than one-fifth.

Appellees, on the other hand, assert, that, in the lifetime of Samuel Best, there was a division of the three hundred acres between him and Ann Simpson, he taking the north one hundred and fifty acres and she taking the south one hundred and fifty acres, and that this division was recognized, after his death, by his widow and children and by Ann Simpson. On March 6, 1815, five months before the death of Samuel Best, Ann Simpson made a deed to her son, William H., making over and assigning to him "all my right and title to one-half of said tract of land mentioned in the within deed, beginning at right angles westerly and southerly, being in quantity of one hundred and fifty acres of land, for his sole use and his heirs and assigns forever."

It is claimed by appellees, that the division, so made between Samuel Best and Ann Simpson, and the conveyance by the

latter to her son, broke the unity of title and joint tenancy, if any such ever existed; that, the joint tenancy having become thereby terminated, Samuel Best died the owner of the north one hundred and fifty acres, which was inherited one-half thereof by his daughter Susan Best, afterwards Susan Jenks, and one-half by his son, John Best, subject to their mother's dower; that a partition was made between Susan and John, by which the former took the north half of the north one hundred and fifty acres, containing seventy-five acres and including the fifty-five acres in controvery, and the latter took the south seventy-five acres of said north one hundred and fifty acres. Susan Jenks, the day before she was married in 1856, executed a deed to her half-brother of twenty acres on the west end of the north seventy-five acres, leaving the fifty-five acres now in controversy, which appellees claim that she owned when she died.

We think the evidence shows, that Susan Jenks regarded herself as the owner of the north seventy-five acres of the north one hundred and fifty acres, and John Best regarded himself as the owner of the south seventy-five acres thereof, and that the interest therein of their mother, Ann Hogan, was regarded by them and by her as a mere dower interest. We do not deem it necessary to discuss the question whether or not Samuel Best and Ann Simpson were joint tenants, nor whether the alleged joint tenancy was changed into a tenancy in common by the acts of the parties.

John Best or Isaac Lemen and Susan Best made a partition of the one hundred and fifty acres between them. Susan took the north seventy-five acres and John or his grantee, Lemen, took the south seventy-five acres. Ann Hogan consented to this partition and recognized it. She permitted her son John to claim the ownership of the south half and to occupy it as owner. She was anxious for her son-in-law, Isaac Lemen, to buy the south half from her son John, and in consideration of his doing so, agreed to take four acres for her dower.

As soon as the division was made, by which the north seventy-five acres were set off to Susan Best, a house was built thereon for her; she took possession and exercised acts of ownership over the seventy-five acres for eleven years, and over the east fifty-five acres for thirty-five years. In 1856 she sold the west twenty acres to her brother James Hogan; this sale was recognized as valid by her mother, who went to live with James on the twenty acres in 1857 and lived there with him until she died.

Susan Jenks lived upon and had possession of the fifty-five acres in controversy from 1845 to her death in 1880, a period of thirty-five years, and during all this time she claimed to be the owner of it, and occupied it in pursuance of the oral partition above mentioned. It will not be claimed that anybody but her mother and her brother, John, and her brother-in-law, Lemen, had any interest whatever in the north one hundred and fifty acres, and they all assented to the division, which assigned to her the north seventy-five acres thereof. We are, therefore, of the opinion that Susan Jenks was the owner of the fifty-five acres at the time of her death in 1880.

The court decreed, in the decree entered at the September term, 1884, that Jenks was entitled to dower in the undivided one-half of the fifty-five acres owned by appellants. The decree in this regard was correct. Jenks could not convey his dower interest to the appellee, Isaac W. Lemen, so as to entitle the latter to an assignment of dower. The right of dower is a mere intangible, inchoate, contingent expectancy, and until it is assigned, it is no estate in the land, but it is a right resting in action only, and it can not be aliened. It may be released so as to bar the right of asserting it against the owner in fee, but it can not be invested in another separately from the fee. Only the person, entitled to dower under the law, can have it assigned. (*Blain* v. *Harrison*, 11 Ill. 384; *Hoots* v. *Graham*, 23 id. 81.) It follows, that the decree, entered in November, 1886, after the commissioners had reported that

dower and homestead could not be set off nor partition made without manifest injury, etc., was erroneous in directing the premises to be sold free of the dower of Jenks. The decree of sale recognizes the validity of a written consent filed in the cause by Lemen on November 23, 1886, which is as follows: "And now comes Isaac W. Lemen, purchaser and owner of all the title and interest of Lorenzo Y. Jenks in all the real estate in controversy in this suit, and hereby in writing, under his hand and seal, consents to the sale of his homestead and dower interests in said premises with the rest of said real estate, and consents to take the value thereof in money, as shall be ascertained and found by the court," and directs the value of the dower interest of Jenks, computed according to the life tables, to be paid out of the proceeds of sale to Lemen. Inasmuch as the deed from Jenks to Lemen did not pass the dower interest of Jenks in the undivided one-half of the land, owned by the collateral heirs of Mrs. Jenks, the written consent of Lemen could not operate to give the purchaser at the master's sale a title that should be free from dower. The written consent of Jenks was necessary to enable the purchaser to get a title that should not be subject to dower.

The next question presented by the record has reference to the correctness of that portion of the decree, which finds, that, by virtue of the deed from Jenks to Lemen, the latter became entitled to the right of homestead in the fifty-five acres and to have set off and allotted to him a homestead of the value of $1000 in the fifty-five acre tract, and which further finds that Lemen's share of the fifty-five acres, as deeded to him in fee by Jenks, should contribute one-half of the value of said homestead, and that the shares of the defendants should contribute the other half of the value thereof, and that, if the tract should be susceptible of division, the commissioners appointed should set off and allot to Lemen a homestead by metes and bounds to the value of $1000.

The original bill in this case for partition of the fifty-five acres and for dower and homestead therein was filed by Jenks on July 25, 1880. More than a month thereafter and during the pendency of the proceeding, to-wit: on August 31, 1880, Jenks made a deed to Lemen, in which the interest conveyed is described as follows: "The following described real estate, to-wit: all my interest, claim and demand in—to the following premises: Lot No. 2 on the plat of survey No. 583 claim 1837, said lot containing fifty-five acres, said interest being an undivided half of said premises acquired under the laws of descent of this State from Susan Jenks, deceased, and dower in the other half of said premises as surviving husband of said Susan Jenks, * * * hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this State." The certificate of acknowledgment also certified to the release and waiver of the right of homestead.

After Lemen filed his petition and became a party complainant to the proceeding, was he entitled, as against appellants, to have a homestead set off to him, or, in the event of sale, to have the value of a homestead paid to him out of the proceeds of sale? Did a right of homestead of the value of $500 in the undivided half of the premises owned by appellants pass to him by the deed from Jenks?

Upon the death of his wife Jenks was the owner in fee of one-half of the land, in which, as survivor of his wife, he is claimed to have had an estate of homestead. His wife's sister and her nephews and nieces were the owners in fee of the other half of the land, and it is claimed that their interest was subject to his estate of homestead therein to the extent of the value of $500. We do not think that so much of his right or estate of homestead as is claimed to have attached to the half of the land, so owned by his wife's sister and nephews and nieces, passed to Lemen by the deed of August 31, 1880. At the time this deed was made dower and homestead had not yet been assigned or set off.

In *White* v. *Plummer*, 96 Ill. 394, it was held that a surviving husband or wife could lease the homestead for any number of years not beyond his or her natural life, and could convey the estate of homestead by deed, and that such leasing or conveyance would not constitute an abandonment of the homestead. It expressly appeared, however, in that case, that, on petition for dower and homestead, the premises had been set apart to the widow as her homestead. (*Browning et al.* v. *Harris et al.* 99 Ill. 456.) The case of *White* v. *Plummer* did not present the question which arises upon the record in the case at bar, namely, whether a surviving husband or wife can, by deed, convey to a third person his or her estate of homestead in premises, the fee of which is in the heirs, *before the homestead has been assigned or set off*, so as to vest such third person, grantee in the deed, with the right to have the homestead set off and assigned to him, just as it might have been set off and assigned to the surviving husband or wife.

As has already been stated, dower is not the subject matter of sale and transfer until it has been allotted; it may be released to the owner of the fee, but no other disposition can be made of it, until it has been set apart. (*Hoots* v. *Graham*, *supra.*) But after dower has been assigned, it becomes an estate, which can be entered upon, and which may be conveyed by deed, and is liable to be sold on execution for debts. (*Walsh* v. *Reis*, 50 Ill. 477.) We think the same principle should apply to the right or estate of homestead. Such right or estate attaching in favor of a surviving husband or wife in premises, the fee of which is owned by the heirs, should not be the subject matter of lease or transfer, before the homestead has been set off and assigned.

Any other construction would lead to practical difficulties in the administration of the Homestead and Dower and Partition acts. Where a husband or wife dies intestate owning the fee of the homestead premises, the surviving wife or husband has dower as well as the right of homestead or occupancy.

The two estates of dower and homestead can not be well adjusted, when an attempt is made to assign or set them off, if each is owned by a different person. Each may be owned by a different person, if the estate of homestead can be transferred before the homestead is set off, because the inchoate right of dower can not be transferred and must remain in the surviving husband or wife.

Section 37 of the Dower act provides that "the surviving husband or wife shall have the homestead or dwelling house, · if he or she desires, and such allotment shall not affect his or her estate of homestead therein, but if the dower is allotted out of other lands, the acceptance of such allotment shall be a waiver and release of the estate of homestead of the person entitled to dower, and his or her children, unless it is otherwise ordered by the court." *Walker* v. *Doane,* 108 Ill. 236.

It is apparent from the language of this section, that our statute favors the allotment of homestead and dower together in one body of land. As an inducement to the surviving husband or wife to take the homestead, it is provided, that the acceptance of an allotment of dower out of other lands, that are separate and disconnected from the homestead or dwelling house, shall operate as a waiver or release of the estate of homestead, unless it is otherwise ordered by the court. If dower is allotted out of other lands and the homestead is worth more than $1000, a sale of the homestead property may be necessary in order to separate the value of the homestead estate. Such a sale, involving as it might a sacrifice of the interests of the heirs, would be avoided, in many instances, by the assignment of homestead and dower together in one body.

The homestead right is given by the statute and does not exist independently of the statute. Manifestly, section 37 does not contemplate or provide for the allotment of dower and homestead in a case where the homestead is owned by a third person and not by the surviving husband or wife. The right to have the homestead or dwelling house when dower

comes to be assigned is conferred upon the surviving husband or wife and not upon any purchaser or grantee of the estate of homestead. The transfer of such estate to an outside party abolishes the right of choice in regard to the homestead, as conferred by section 37.

The provision of the law, that the acceptance of an allotment of dower out of other lands may be a waiver and release of the homestead estate, necessarily proceeds upon the supposition that the owner of the right of dower is also the owner of the right of homestead. It would certainly be unjust, that the act of a party entitled to dower should have the effect of destroying the interest of a party entitled to the estate of homestead. Such, however, might be the result, if the two estates are owned by different persons prior to the allotment and assignment provided for in the statute. Indeed, the estate of homestead is spoken of in section 37 as "the estate of homestead of *the person entitled to dower,*" excluding the idea that such estate could belong to a person not entitled to dower.

Thompson, in his work on Homesteads and Exemptions, says, in sec. 452: "Whatever views are entertained as to the interest in land created by a statute of homestead—whether it rises to the dignity of an *estate,* or sinks to the level of a mere negative immunity from dispossession—all courts agree that it is not such an interest in lands as is alienable separately from the fee. In this respect it sustains a strict analogy to the right of dower. Either may be released to the alienee of the fee so as to merge therein, but neither can be aliened separately," (referring to *McDonald* v. *Crandall,* 43 Ill. 231; *Hewitt* v. *Templeton,* 48 id. 367; *Chamberlin* v. *Lyell,* 3 Mich. 458; *Barker* v. *Rollins,* 30 Iowa, 412; *Bowyer's Appeal,* 21 Pa. St. 210.) Although the principle announced in the quotation here made has reference more particularly to cases where the estate of homestead and the fee of the homestead premises are owned by the same person, yet we see no objection to applying the doctrine to the estate of homestead owned

by the surviving husband or wife, as it exists before the assignment of the homestead.

We are, therefore, of the opinion that the right of a surviving husband or wife to sell and convey the estate of homestead to a third person, or to lease the homestead for a period of years instead of occupying it in person, should be limited to cases where the homestead has been set off and assigned. In *Farnan* v. *Borders*, 119 Ill. 228, the homestead had not been set off or assigned when the widow left it.

It follows from the views already expressed that neither Jenks nor Lemen had any homestead estate in the premises in question when the decrees herein referred to were rendered. By inheritance from his deceased wife Jenks was the owner in fee of one-half of the tract of fifty-five acres. By the deed to Lemen the latter became the owner in fee of the one-half so inherited by Jenks. Inasmuch as the deed to Lemen contained such recitals and was acknowledged in such way as to waive and release the homestead estate, the fee of one-half the land passed to Lemen free from any right of homestead in Jenks. The estate of homestead in one-half of the land became merged in the fee when the title was so transferred to Lemen. If any homestead estate existed in the other half of the land which was inherited by the heirs of Mrs. Jenks, it did not pass to Lemen, if the foregoing views are correct, because the homestead had not yet been assigned or set off. But no right of homestead remained in Jenks after his deed to Lemen. In that deed Jenks waived and released all rights under the Homestead Exemption law of the State. He could not release one-half of his homestead estate and retain the other half. The estate of homestead is an entirety. It was not the intention of the statute, that such estate should be parceled out in pieces before the setting off or assignment of the homestead. A surviving husband or wife can not, by deed, release or waive one-half of the homestead estate before any homestead has been set off, and can not, under a claim that the

other half of the estate has been retained, afterwards demand that commissioners set off to him or her a homestead of the value of $500.

The decrees of the circuit court are affirmed in so far as they find that appellee Jenks is entitled to dower in the one-half of the tract of fifty-five acres owned by appellants, and in so far as they find that Jenks became the owner of the other half of the tract by inheritance from his wife and that Lemen became the owner thereof by deed from Jenks. Inasmuch, however, as the decrees are erroneous in the other respects herein indicated, they are reversed and remanded with directions to the circuit court to modify the same in accordance with the views here expressed.

*Decrees reversed in part and in part affirmed.*