Miller v. Schnebly.

MILLER, *Appellant,* v. SCHNEBLY *et al.*

DIVISION TWO.

1. **Homestead:** NOTICE : STATUTE. Where the tract of land out of which the homestead of the widow is to be set apart exceeds the value of the homestead and has been divided and allotted to the owners of the fee, subject to the homestead right, no admeasurement of the homestead can be made by the probate or other court without notice to the parties in interest.

2. ——— : ——— : VOID JUDGMENT. A judgment of the probate court setting apart such homestead without notice is *coram non judice,* and void.

3. ——— : ———. Nor can a homestead be set apart under Revised Statutes, 1889, section 5443, unless the parties in interest are before the court.

4. **Homestead, not Vendible, When.** A homestead, before it is set apart by metes and bounds, is not the subject of sale by a widow.

5. ——— : RELEASE. It may, however, in such case, be released to the owner of the fee.

*Appeal from Clark Circuit Court.* — HON. B. E. TURNER, Judge.

AFFIRMED.

*W. L. Berkheimer* for appellant.

(1) The husband of Mrs. Miller, the plaintiff's grantor, died during the year 1869, while the homestead law of 1865 was in force. Such being the case, she took a fee simple in $1,500 worth of real estate not exceeding one hundred and sixty acres. *Scouten v. Wood,* 57 Mo. 380. (2) The law in force at the time of the death of the husband determines the rights of the widow in the homestead. *Davidson v. Davis,* 86 Mo. 440. (3) The widow is not estopped by the proceedings in the partition-suit, as it was *ex parte,* and, from the evidence in this case, she was wholly ignorant of her rights. *Seek v. Haines,* 68 Mo. 13; *Gragg v. Gragg,* 65 Mo. 343. (4) There can be no estoppel where a party is not advised of his rights. *Burk v. Adams,* 80 Mo. 504; *Frederick v. Railroad,* 82 Mo. 402; *Hull v. Kavanaugh,* 6 Mo. App. 143. (5) The court can very easily see, from this evidence, that this defendant and James Miller were the moving parties all through, in order to acquire the title to all of the land, and their action was a fraud upon the widow, who was an old, feeble woman, and her conduct, induced by the fraud of the two Millers, cannot be set up in this suit by them, or either of them, as an estoppel against her, or those claiming under her. *Douglass v. Cissna,* 17 Mo. App. 44. (6) In an action to divest the legal title, and hold one in whom it is vested as a trustee (as in this case), the evidence must be reasonably clear and satisfactory. *Tedford v. Trimble,* 87 Mo. 226; *Stephens v. Adams,* 61 Mo. 453; *Sutton v. Shipp,* 65 Mo. 297; *Shaw v. Shaw,* 86 Mo. 594. (7) The partition suit is not *res judicata.* A matter to be such must be determined. *Hickerson v. Mexico,* 58 Mo. 61; *Lightfoot v. Wilhite,* 23 Mo. App. 5; *Ford v. Hennessey,* 70 Mo. 580. In the partition suit in evidence in

this case the parties were not adversary. (8) Parties to a judgment are not bound by it in a subsequent controversy between themselves, unless they were adversary. *McMahon v. Geiger*, 73 Mo. 145, and cases cited.

*Matlock & Hiller* for respondents.

(1) The judgment of the probate court setting off the homestead is void. It can be set off only while the administration is pending. R. S. 1879, secs. 2693, 2694; *State v. Stephenson*, 12 Mo. 178; *Miller v. Major*, 67 Mo. 247; *Goebel v. Foster*, 8 Mo. App. 443. (2) The final judgment of partition was conclusive. *Hart v. Steedman*, 98 Mo. 452; *Bobb v. Graham*, 89 Mo. 200; *Halladay v. Langford*, 87 Mo. 577; *Forder v. Davis*, 38 Mo. 107; *Pochman v. Meatt*, 49 Mo. 345; *Robb v. Timmermeister*, 15 Mo. App. 249. (3) Alexander Miller and wife are estopped to claim the land in controversy, for they bought with notice of defendants' equities. Notice is actual when the purchaser knows of the existence of the adverse claim, or is conscious of having the means of knowledge although he may not use them. *Sensenderfer v. Kemp*, 83 Mo. 581; *Meir v. Blume*, 80 Mo. 179; *Muldrow v. Robinson*, 58 Mo. 331; *Fellows v. Wise*, 55 Mo. 413; *Major v. Lisle*, 51 Mo. 227; *Speck v. Riggins*, 40 Mo. 405; *Leavitt v. Laforce*, 71 Mo. 353. Defendant being in possession, and plaintiff, knowing it, is put on inquiry. *Martin v. Jones*, 72 Mo. 23. (4) The trial court having found all the issues of fact for the defendant, such finding will not be disturbed unless cogent reasons exist for a departure. *Taylor v. Cayce*, 97 Mo. 243; *Davis v. Kline*, 96 Mo. 401; *Mathias v. O'Neil*, 94 Mo. 520; *Robertson v. Reed*, 38 Mo. App. 32.

THOMAS, J.—This is a most unseemly contest between a son and son-in-law of an old lady, proved to have been eighty-nine years old at the time of the trial in the circuit court, in regard to her interest in the

estate of her deceased husband. In 1869, John Miller died seized of the southeast quarter of section 18, township 66, range 7, west, containing one hundred and sixty acres, and also twenty acres in section 23, township 66, range 8, west, and forty acres in section 5 of the same township and range 7, west. He was living on the land in section 18 at the time of his death. He left a widow, Mary J. Miller, and eight children as his heirs. John D. Miller, one of his sons, was appointed administrator of his estate, and in February, 1872, made final settlement thereof, after having given the notice required by law. At the time of the death of John Miller, John B. Miller, having married a daughter of the deceased, was living in the family with him and continued to live on the farm afterwards. In 1871, John B. Miller (one of the defendants in this case) bought the interests of four, and James Miller, a son of decedent, bought the interests of two of the heirs in all the lands above described. Then John B. Miller and his wife (she being an heir) owned jointly five-eighths, and James Miller (being an heir) owned three-eighths of all these lands, subject to whatever estate the widow, Mary J. Miller, had in them.

In that year (1871), these parties, James Miller, John B. Miller and his wife and Mary J. Miller made an *ex parte* application by petition to the court of common pleas of Clark county, in which county the property was situated, for the partition of these lands, in which petition it was alleged that the widow, Mary J. Miller, had a dower interest of one-third of the lands for her life, that John B. Miller and his wife owned five-eighths, and James Miller three-eighths of the lands, subject to the dower interest of the widow. A decree of partition was entered according to the allegations of this petition and commissioners were appointed to divide the lands, according to the decree. The commissioners qualified, and about the time they were to proceed to make the partition James Miller and John B. Miller, the former

then living on the northern portion of the one hundred and sixty-acre tract and the latter living with the widow in the mansion house, met and agreed how the land should be divided; the terms agreed upon were these: James Miller was to take seventy-one acres off the north end of the one hundred and sixty-acre tract, and the twenty acres in section 23, and John B. Miller was to take eighty-nine acres off the south end of the land in section 18 and the forty acres in section 5; the widow's dower was to be carved out of the eighty-nine acres to be set off to John B. in section 18, and to equalize the division according to their interests John B. was to board the widow and pay her $25 per year, and James was to pay her $15 annually, these payments to continue as long as she lived.

The commissioners met at the mansion house, and James, John B. and the widow were there together, and the arrangement between James and John B., as set out above, was made known to the widow and she assented to it. There is some discrepancy as to what the widow knew about her rights in the land at that time. James says that Caldwell, one of the commissioners, an old friend of the family, and one in whom the widow confided, informed her that she could take a child's part or dower, while John B. says he (Caldwell) informed her that she had a homestead in the lands in fee or dower, but advised her that it was best for her to take a dower interest; for no one could deprive her of that, while she might be induced to sell her fee estate; and she then said she would take the dower interest. Thereupon the commissioners set off to James the seventy-one acres in section 18, and the twenty acres in section 23; to John B. fifty-four acres in the southeast part of the land in section 18 and the forty acres in section 5, and to the widow thirty-five acres in the southwest corner of the land in section 18. The tracts set off to each in section 18 were all described by metes and bounds.

The commissioners made their report which was confirmed and approved by the court.    James took possession of the land assigned to him, and afterwards and prior to 1886 sold the seventy-one acres in section 18 to J. C. Wilson.    John B. Miller continued to live with the widow in the mansion house and he took care of the old lady until 1886, paying her the $25 and James paying her the $15 per annum, as per their agreement.    John B. made valuable and lasting improvements on the thirty-five acres set off to the widow, amounting to $700 or $800, under the belief, as he swears, that he was to be the owner of this thirty-five acres at the widow's death.    In 1886, John B. concluded to move to Kansas, and, the widow refusing to go there, a son of hers, David Miller, took her, under an agreement with John B. that the latter would pay her board and the $25 per annum as formerly.    John B. then went to Kansas.    The widow remained with her son David only four months and then was taken to Alexander Miller's, another son of hers.

About the time of John B.'s moving to Kansas, the widow applied to the probate court of Clark county to have her homestead in these lands set off to her, and forty acres were set off to her by commissioners appointed by that court.    The report of the commissioners was approved in the summer of 1886, and in September, 1886, the widow conveyed this homestead tract by warranty deed to Eliza Miller, the wife of Alexander Miller, for the expressed consideration of $100.    The record does not show that anyone was made a party to the proceeding in the probate court, in 1886, to set off the homestead, or that anyone interested in the estate was notified of it in any way.

Alexander Miller brought this action in ejectment against defendant Schnebly who was the tenant of John B. Miller ; the latter was, on his own motion, made a party defendant, and answered setting up said partition proceeding and the agreement of James and himself

and the widow in regard to the division of the property, and claimed that the judgment in partition was conclusive upon the widow as to her homestead interest, and that her assent to the agreement in regard to the division, and her standing by for fifteen years and permitting James to sell the part he had obtained, to an innocent purchaser, and permitting him ( John B.) to make $700 or $800 worth of improvements on this land with the expectation that it would be his, at her death, estopped her and her assigns from claiming a homestead. The agreement, set out above, was proven by James and John B., and no one contradicted them. Alexander and his wife testified that they knew nothing of the agreement except rumor in the family. They also testified that they paid the widow nothing for the land, but gave their note to her for $100 and agreed to take care of her as long as she lived, as the consideration of the conveyance.

The case was tried by the court. No instructions were asked or given, and the court found the issues for the defendants, and gave judgment against plaintiff for costs, and he has appealed to this court.

There being no instructions given or refused, and no finding of facts, we are not informed as to the theory upon which the court below decided the case. But no matter upon what theory it was decided, the judgment was for the right party, for plaintiff had no title to the property in dispute upon which an ejectment can be maintained.

I. The proceeding in the probate court of Clark county in 1886 was utterly void, for the reason that no notice of such proceeding was given to the parties interested in the homestead property. It is claimed by appellant that by section 2693, Revised Statutes, 1879, the probate court had jurisdiction to appoint commissioners to set off homesteads. Granted. The clause of that section which confers this jurisdiction is as follows: "But all the right, title and interest of the deceased

housekeeper or head of a family, in the premises.except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased, *and the probate court having jurisdiction of the estate of the deceased housekeeper or head of a family shall, when necessary*, appoint three commissioners to set out such homestead to the person or persons entitled thereto." Section 2694 provides how the commissioners appointed shall perform their duties ; but the commissioners referred to in that section are not to be held to be the commissioners only, that are provided for in the section, a part of which is quoted above ; for it has been uniformly held by this court that the commissioners appointed in partition and other proceedings must proceed to perform their duties as prescribed by section 2694, *supra*. *Bryan v. Rhoades*, 96 Mo. 485 ; *Graves v. Cochran*, 68 Mo. 74; *Gragg v. Gragg*, 65 Mo. 343.

The statute nowhere prescribing the method of procedure in setting out a homestead to the widow and minor children, the court must determine what that method must be, giving the statute that construction, which makes it conform to the legislative will, as far as that will can be ascertained. Probate courts have power to appoint commissioners to set off homesteads to widows and children in certain contingencies. There is no question about that. It is not necessary for us to decide in this case whether the words in the section quoted, " the probate court having jurisdiction of the estate of the deceased housekeeper or head of a family," limit the jurisdiction of that court to the time of the pendency of the administration and do not extend it after final settlement, or, if they do so limit it, whether the administrator is a necessary party to the proceeding, and must have notice ; for we are satisfied, in a case like the one here, where the tract of land, out of which the homestead must be carved, has been divided and allotted to

the different parties owning the fee subject to the homestead right, and where it is conceded the tract exceeds the value of the homestead, no admeasurement of the homestead can be made either by the order of a probate court or any other court without notice to the parties in interest.

When it is proposed to take a man's property he must have "his day in court." He may not be able to defeat the claim, but he has a right to be heard. To transfer his land to another without notice to him would be depriving him of his property "without due process of law." Here it clearly and unequivocally appears that the deceased owned and lived on one hundred and sixty acres of land, which after his death was divided into three parts, seventy-one acres being set off to James Miller, thirty-five to the widow as her dower and fifty-four to John B. Miller. James has long since sold his interest to an innocent purchaser. John B. built barns, etc., at an expense of $700 or $800 on the thirty-five acres set apart to the widow under the belief that he not only owned the fifty-four acres, but also the fee in the thirty-five acres.

Final settlement of the estate of the decedent is made in February, 1872. This condition of things continues for fourteen or fifteen years, and then the widow goes into the probate court, apparently without notice to anyone, and certainly without notice to any of the owners of this land, and has her homestead set out, *taking it all from John B. Miller's part of the land.* This rendered the proceeding *coram non judice* and utterly void. *Cloud v. The Inhabitants of Pierce City*, 86 Mo. 357.

II. It may be claimed that, if the homestead has not been assigned, the case ought to be sent back to the circuit court of Clark county with directions to have it set off under section 5443, Revised Statutes, 1889, and then to give judgment accordingly. Plaintiff has no right to this disposition of the case for two reasons :

*First.* All the parties interested in *the homestead tract* are not before the court, and cannot, in this proceeding, be brought before the court. Before the homestead in this case, if any now exists, can be set off, the owners of the seventy-one acres and the fifty-four acres must be brought before the court so that the equities of all may be adjusted. And, *second*, the homestead, not having been set out by metes and bounds, as is shown above, was not the subject of sale by the widow, and hence plaintiff's wife did not acquire it by taking a deed from her. And, besides that, her deed calls for forty acres only and not for the whole homestead tract. Speaking of the power of the homesteader to convey an *unallotted* homestead, Judge THOMPSON, in his work on homesteads, says: "Whatever views are entertained as to the interest in land created by a statute of homestead, whether it rises to the dignity of an *estate* or sinks to the level of a mere negative immunity from dispossession, all courts agree that it is not such an interest in lands as is alienable separately from the fee. In this respect it sustains a strict analogy to the right of dower. Either may be released to the alienee of the fee so as to merge therein, but neither can be aliened separately." Thompson on Homesteads, sec. 452; *Best v. Jenks*, 123 Ill. 447. This is a wholesome rule which will prevent parties from speculating in unknown quantities as has been attempted in this case.

Having come to the conclusion that the judgment of the trial court ought to be affirmed for the reasons given, we deem it unnecessary to express, nor do we express, any opinion as to the effect upon the widow's homestead of the partition proceedings in 1871 and the agreement claimed to have been made by those interested in the property at that time. It is enough for us to decide, and we do decide, that this plaintiff has not shown himself entitled to the possession of the property in dispute, and for that reason the judgment of the trial court is affirmed. All of division number 2 concur.