(No. 29439.—

Guy Bruce, Appellee, *vs.* Mollie McCormick *et al.*— (Ed Wood, Appellant.)

*Opinion filed March 19, 1947.*

BURGESS, LOY & BURGESS, of Fairfield, for appellant.

CLARENCE UMFLEET, of Fairfield, guardian *ad litem*.

CREIGHTON & KERR, of Fairfield, for appellee.

WILSON & McILVAINE, of Chicago, *amici curiae*.

Mr. JUSTICE STONE delivered the opinion of the court:

By this direct appeal, involving a freehold, appellant seeks reversal of a decree of the circuit court of Wayne county, awarding partition as prayed in the complaint and dismissing the counterclaim of appellant.

The facts are not in dispute and are, that Samuel Wood died intestate March 5, 1943, the owner of 120 acres of farm lands. He left Ida Wood, his widow, six children and seven grandchildren, children of a deceased son. April 17, 1943, Ida Wood, widow, executed a quitclaim deed purporting to convey all her interest in the property to appellee, Guy Bruce, not an heir-at-law, and who had no title of record to the land conveyed. April 19, 1943, and April 27, 1943, Fred Wood and W. T. Wood, two of the heirs of Samuel Wood, deceased, conveyed their respective interests in the land to appellee. May 6, 1943, Ida Wood, widow, released and quitclaimed "all interest" in the land

to four of the children and to six of the grandchildren of Samuel Wood, deceased, they being all the heirs except Fred Wood and W. T. Wood, two of the children, and Ollie Wood Ewing, one of the grandchildren of the deceased.

Letters of administration were issued to Fred Wood March 12, 1943. The estate has not been closed. The personal estate is sufficient to pay all claims against the estate. Ida Wood, widow, did not, within ten months after the issuance of letters of administration, file a written election to take dower in the lands of the deceased, and, on July 25, 1944, after the ten-months' period had elapsed, executed a warranty deed to appellee, conveying to him an undivided one-third of the land involved. All the property was subject to an oil and gas lease and one half was subject also to a mineral deed to an undivided one-half interest in the oil and gas underlying it. This lease and deed to the minerals are not involved here.

The complaint filed by appellee, as amended, alleged that, by reason of the deeds to him, he acquired title to an undivided 11/21 of the land in fee; that the remainder of the heirs own an undivided 10/21 therein, all subject to the oil and gas lease and the mineral deed. Ed Wood, a son of deceased, answered denying that the warranty deed of Ida Wood, widow of Samuel, conveyed one third of the title to the land to appellee and denied that appellee owned an 11/21 interest in the property. He also filed a counterclaim reciting the conveyances of Fred and W. T. Wood of their 4/21 interest in the land to appellee and alleging that upon the death of Samuel Wood, Ida Wood, his widow, became endowed of a one-third interest in the real estate, and being so endowed and not having elected to take one third in fee and not being barred of dower, did, by her release and quitclaim deed to four of the children and six of the grandchildren, dated May 6, 1943, release to them her dower in all the land including

their shares of the land of the deceased; that by the failure of the widow to elect to take dower, and not having released her dower interest to three of the heirs, Ollie Wood Ewing, a granddaughter, and Fred and W. T. Wood, two of the children of Samuel Wood, she became seized in fee simple of one third of the undivided interest of the three named heirs, which interest passed by the warranty deed dated July 25, 1944, to appellee, and that appellee owned 43/147 and the remaining heirs owned the remaining 104/147, and prayed for partition. Issue was taken on this counterclaim by appellee, who, in his answer thereto, realleged the claims made in his original complaint.

The decree found the facts as herein recited and held that Ida Wood, having failed to perfect her dower in the land within ten months after the issuance of letters of administration, became seized in fee simple of an undivided one-third interest in said premises, and by her warranty deed of July 25, 1944, conveyed her one-third interest to appellee, decreed partition as claimed in the complaint, and dismissed the counterclaim for want of equity.

The question presented is what, if any, title Ida Wood, widow, conveyed by her release and the various deeds she executed.

When this case first came on for consideration on the briefs of the parties, the contention of appellee, Bruce, as stated in his brief, was: "It is the contention of plaintiff-appellees in this case that within the ten-months period after the issuance of letters of administration on the estate of Samuel Wood, deceased, on the 12th day of March, 1943, Ida Wood, the surviving widow, did not have such an estate in the lands of her deceased husband that she could convey, release or quitclaim to anyone; that it was only after the elapse of this ten-month period that her interest became determined and vested so that she could convey the same by deed." A rehearing was allowed for

further study of the problems involved, and on rehearing plaintiff, appellee, takes the position that Ida Wood's quit-claim deed of April 17, 1943, conveyed the fee to a one-third interest in the entire property to appellee, Bruce; that while, under the Descent Act and the Dower Act, prior to the adoption of the Probate Act of 1939, the failure of the surviving spouse to elect to take dower was a condition precedent to the vesting of the fee, the Probate Act, which repealed the Descent and Dower Acts, vested the fee in the surviving spouse subject to a condition subsequent, *i.e.,* that the surviving spouse within the time and in the manner specified in that act, perfect her right to dower. This is likewise the position taken by *amici curiae,* who, with the consent of the court, filed a brief while the cause was pending on petition for rehearing.

The first question presenting itself, therefore, is, what effect, if any, the Probate Act has on the rule existing prior to its going into effect on January 1, 1940. Section 1 of the Descent Act, (Ill. Rev. Stat. 1937, chap. 39, par. 1,) provided: "That estates, both real and personal, of residents and non-resident proprietors in this State dying intestate, * * * shall descend to and be distributed in manner following, to-wit:" The fourth paragraph of this section provided as follows: "When there is a widow or a surviving husband and also a child or children or descendants of such child or children of the intestate, the widow or surviving husband shall receive as his or her absolute personal estate, one-third of all the personal estate of the intestate; and he or she shall also receive as his or her absolute estate, in lieu of dower therein, one-third of each parcel of real estate of which the intestate died seized and in which such widow or surviving husband shall waive his or her right of dower. Such waiver may be effected by either or both of the following methods: (a) By filing or recording, within one year after letters of administration are issued, in the manner hereinafter provided, an in-

strument in writing duly signed and acknowledged by the surviving widow or husband expressing his or her intention to waive dower in such real estate; and (b) By failing to file or record within one year after letters of administration are issued, in the manner hereinafter provided, an election to take dower in such real estate."

Section 1 of the Dower Act, (Ill. Rev. Stat. 1937, chap. 41, par. 1,) provided as follows: "The estate of curtesy is hereby abolished, and the surviving husband or wife shall be endowed of the third part of all the lands whereof the deceased husband or wife was seized of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form." Section 10 of the Dower Act provided as follows: "Any devise of land, or estate therein, or any other provision made by the will of a deceased husband or wife for a surviving husband or wife, shall, unless otherwise expressed in the will, bar the dower and other rights of such survivor given by Section 1 hereof, unless such survivor shall elect to and does renounce the benefit of such devise or other provision, in which case he or she shall be entitled to such dower and other rights as hereinbefore defined: Provided, that in the event of such renunciation, the surviving husband or wife shall receive as his or her absolute estate, in lieu of dower in the real estate of which the deceased died seized, one-third of each parcel of real estate which the deceased owned at the time of his death, and which shall remain after the payment of all just debts and claims against the estate of the deceased husband or wife in which such surviving husband or wife shall waive his or her right of such dower. Such waiver may be effected by either or both of the following methods:" etc. There follows in this section the methods by which waiver of right of dower may be effected, which are, either by filing within one year after letters testamentary or of administration are issued, an instrument in writing expressing intention to waive

dower, or by failing to file an election to take dower. It was also provided that the election to take dower should be in writing.

The question whether the rule of law relating to dower was changed by the Probate Act must be determined from a consideration of sections 11, 18 and 19 of that act. (Ill. Rev. Stat. 1945, chap. 3, pars. 162, 170, 171.) The dower right existed at common law. It exists in this State today under 'the common-law rule as extended or modified by statute. Under section 29 of the Probate Act (par. 180,) it is the duty of the owner of the fee to "assign the dower as soon as practicable after the right thereto is perfected in the manner provided in Section 19." Dower, prior to assignment, is but a right and is not an estate capable of being conveyed. (*Liesman* v. *Liesman,* 331 Ill. 287; *Maring* v. *Meeker,* 263 Ill. 136; *Best* v. *Jenks,* 123 Ill. 447.) In 1939, there was submitted to the General Assembly, by a committee of the Illinois State Bar Association, a codification of the statutes now embraced within the scope of the Probate Act, and it included the Descent and Dower Acts with whatever modification of those acts may be found therein. This proposed Probate Act was, with some amendment, enacted by the General Assembly in 1939 and became effective January 1, 1940.

As we understand the contentions of appellee and *amici curiae,* the Descent and Dower Acts, prior to their incorporation in the Probate Act of 1939, required the loss or destruction of the widow's right to perfect dower as a condition precedent to acquiring the fee by her, but that the Probate Act changed that, so that upon the death of the intestate the surviving spouse receives one-third interest in the property in fee subject to the condition subsequent, that she perfect her right of dower. This question, it will be seen, is of vital importance in determining whether Ida Wood's deed to appellee of April 17, 1943, was operative

to pass the fee. In other words, if the rule obtaining under the Descent and Dower Acts is still the rule, then Ida Wood's deed of April 17, 1943, was inoperative to pass any interest in the land. So the question of primary importance here, is, what, if any, changes did the Probate Act make, as affects the dower right? Section 11 of the Probate Act provides: "The intestate real and personal estate of a resident decedent and the intestate real estate in this state of a non-resident decedent, * * * descends and shall be distributed as follows: First, when there is a surviving spouse and also a descendant of the decedent: (a) to the surviving spouse one-third of the personal estate and one-third of each parcel of real estate of which the decedent died seized and in which the surviving spouse does not perfect his right to dower in the manner provided in Section 19 hereof and (b) to the decedent's descendants per stirpes two-thirds of the personal estate, two-thirds of each parcel of real estate in which the surviving spouse does not perfect his right to dower and, subject to the dower of the surviving spouse, all of each parcel of real estate in which the surviving spouse perfects his right to dower." Section 18 of the Probate Act provides: "A surviving spouse, whether husband or wife, is endowed of a third part of all real estate of which the decedent was seized of an estate of inheritance at any time during the marriage, unless the dower has been released or is barred." Section 19 provides, so far as important here, as follows: "The surviving spouse of a decedent who dies after the effective date of this Act is barred of dower unless he perfects his right thereto by filing during his lifetime at the time and place provided for herein a written instrument describing the real estate, signed by the surviving spouse, and declaring his intention to take dower therein." This section also fixes the time in which such instrument may be filed at any time within ten months after the death of

the decedent, if he dies intestate, and the issuance of letters of administration, making provision for a contingency in which such time may be extended.

The argument here centers around the proper construction of the language of section 11 of the Probate Act, "to the surviving spouse * * * one-third of each parcel of real estate of which the decedent dies seized and in which the surviving spouse does not perfect his right to dower in the manner provided in Section 19 hereof," and the language of section 18 of the Probate Act, "a surviving spouse, whether husband or wife, is endowed of a third part of all real estate * * * unless the dower has been released or is barred." Section 19 provides the manner and time in which dower may be perfected and, if not perfected in that manner and time, dower is barred, and so is not of aid in determining the proper construction of sections 11 and 18.

It is a familiar rule of construction that sections of a statute must be construed together, and if they can be reconciled the legislative intent is to be garnered from them. The first question is, whether section 11 of the Probate Act provides a different devolution of real estate to the surviving spouse than did section 1 of the Descent Act. It will be noted that the first paragraphs of section 11 of the Probate Act and of section 1 of the Descent Act (aside from provisions as to location of real estate held by nonresidents,) are in substance identical. The interest taken by the surviving spouse under the Probate Act is provided under the first rule, while under the Descent Act it was under the fourth rule. Under section 11 of the Probate Act one third of each parcel of decedent's real estate in which the surviving spouse does not perfect his right to dower descends and shall be distributed to the widow. The fourth paragraph of section 1 of the Descent Act declared that the surviving spouse shall receive, as his or her absolute estate in lieu of dower therein, one third

of each parcel of decedent's real estate in which the widow or surviving husband shall waive his or her right of dower.

Counsel for appellee and *amici curiae* argue that this change in language is effective to give to the widow, in the first instance, a fee in one third instead of a right of dower, which right must be perfected, while it is contended on behalf of appellants that this language does not in effect change the devolution of real estate.

Coming to a consideration of section 18 of the Probate Act, we find, in comparing it with section 1 of the Dower Act, that they are identical as to dower except that the Probate Act uses the language "unless the dower has been released or is barred," while the Dower Act uses the language "unless the same [referring to dower] shall have been relinquished in legal form." What is the meaning of the language of section 18 of the Probate Act that the surviving spouse "is endowed of a third part of all real estate of which the decedent was seized," and the language "unless *the* dower has been released or is barred?" Is the word "endowed" to be taken as vesting the fee in one third of the real estate, so that section 18 means that she shall be vested with the fee in one-third part of all lands of the decedent unless she perfects her dower? To be endowed of real estate of the decedent, the surviving spouse, by the general acceptance of the meaning of that term, receives dower in the lands of the decedent. She therefore has dower unless she releases it or it is barred. This was likewise the meaning of section 1 of the Dower Act. We are unable to see any dissimilarity in the meaning of the language "have been relinquished in legal form" and "has been released or is barred." The provision of section 19 of the Probate Act provides the circumstance by which dower is barred. Under the Dower Act the surviving spouse was barred of dower by failing to elect to take dower as therein provided. The method by which dower may become barred as provided in section 19 was much

more direct and simple than the method provided for barring dower or electing to take or release it under the Dower Act, but it seems clear to us that in effect the meaning must be held to be the same.

Section 11 says that the surviving spouse is to have the fee in one third of the lands in which the surviving spouse does not perfect his right of dower in the manner provided by section 19. The language "perfect his right to dower" presupposes an existing imperfect or unperfected right. The surviving spouse is given, by the language of both sections 11 and 18, that unperfected right. Can it be said that this imperfect right or interest,—and it is an interest, (*Liesman* v. *Liesman,* 331 Ill. 287; *Maring* v. *Meeker,* 263 Ill. 136; *Best* v. *Jenks,* 123 Ill. 447,)—and the fee are both, by sections 11 and 18 of the Probate Act, vested in the first instance in the surviving spouse? Is it to be construed as vesting in the surviving spouse a fee conditioned upon a condition subsequent, or is "the dower" the interest which is vested in the widow in the first instance subject to being divested by lapse of time and inaction on her part, or perfected by her election to take it? Does the language in section 11, providing for perfecting her right to dower, relate to the interest with which she is endowed? Section 18 provides that she is endowed of a third part unless "the dower" has been released or is barred. Does "the dower" refer to the interest with which she was endowed? It will be noted that the language is not merely "unless dower has been released" but the term is used with the definite article "the" and must therefore be held to relate to a right of dower previously given. Is it not therefore more in keeping with the rules of construction to say that what descends to her is an unperfected right of dower, subject to being perfected as provided in section 19?

Where is the fee? In law the fee is always vested somewhere. Does it rest in the heirs encumbered with the dower right of the widow which right may be released or

barred? Section 18 of the Probate Act clearly provides for a dower that may be released, and certainly to release a right of dower, or any other interest, the surviving spouse must have had it. She cannot release it to a stranger to the title. (*Maring* v. *Meeker,* 263 Ill. 136; *Sloniger* v. *Sloniger,* 161 Ill. 270; *Heisen* v. *Heisen,* 145 Ill. 658; *Best* v. *Jenks,* 123 Ill. 447.) We are of the opinion, therefore, that reading sections 11, 18 and 19 together, it was clearly the legislative intent that the widow be given, in the first instance, dower, and that the fee descend to the decedent's children encumbered with the right existing in the spouse either to perfect dower or to permit the barring of that right by which she becomes vested with the fee in one third of the real estate, and that the language of the Probate Act has not changed the effect of the Descent and Dower Act but has codified and simplified them.

It follows that the interest of the surviving spouse, in a case such as this, is to depend upon whether she elects to perfect her right of dower or to permit it to become barred. This is a condition precedent to the vesting of the fee. Not only is it precedent in point of time, since no fee can vest until the question of her accepting or failing to accept dower has been settled, but it is a condition precedent in that without its fulfillment no fee can become vested. (*Braidwood* v. *Charles,* 327 Ill. 500; *Steinhagen* v. *Trull,* 320 Ill. 382.) In *Ruwaldt* v. *McBride, Inc.,* 388 Ill. 285, the intestate was survived by a widow and six children. He died in 1936. Within the statutory period the widow filed her election to waive dower and take a one-third fee in the decedent's real property, and in passing upon the effect of her election, this court said: "the effect of her election is to reduce the interest of each one of the children from a one-sixth interest subject to dower, to a one-ninth interest in fee." The interest of the children reduced, must have been an interest they had. If they had it, she did not. We are of the opinion, therefore, that in this case,

on the death of Wood, his descendants took the fee to the land encumbered with the widow's right of dower, and it was only by her failure to perfect that dower that she would have come into the fee to one third of the property. Since she did not have an interest which she could convey to a stranger, and an election to waive dower or the lapse of time was necessary to vest the fee in her during the statutory period, her quitclaim deed in this case to appellee of April 17, 1943, was ineffective to pass any interest at all. She had no interest she could convey by deed. (*O'Malley* v. *Deany*, 384 Ill. 484.) Since it is also the law that a quitclaim deed does not pass after-acquired title or a future interest, (*O'Malley* v. *Deany*, 384 Ill. 484; *Thornton* v. *Louch*, 297 Ill. 204; *DuBois* v. *Judy*, 291 Ill. 340,) her deed of April 17, 1943, had no effect to aid the deed given by her to appellee on July 25, 1944.

*Bundy* v. *Solon*, 384 Ill. 137, involved the construction of a trust established by the deceased husband and his brother for the widow of the deceased, and the question was whether, under the terms of the trust, she was to be considered an heir of the deceased husband. It was there pointed out that while the law of descent in force at the time of the death of her husband conferred upon the surviving widow one third of his estate subject to her election to change the character of the estate to dower, such estate is not immediately vested by law but may be so vested by her own act. What then is the interest, if any, in the widow between the death of her husband intestate and the time when, under the statute, she may become barred by dower by failing to elect or until she elects within that period to take dower? During the marriage and life of both husband and wife each had an inchoate right of dower that could be released only by joining in a deed with the other or in a separate deed to the other's grantee. Even prior to the amendment of the Descent Act in 1923, and of the Dower Act in 1925, the surviving widow's right of

dower became, from the death of the owner of real estate, consummate and subject to being definitely ascertained and set off to her. Until set off, a conveyance, to be effective as the release of the right to have the dower assigned, could only be to the owner of the fee. (*Maring* v. *Meeker,* 263 Ill. 136; *Sloniger* v. *Sloniger,* 161 Ill. 270; *Heisen* v. *Heisen,* 145 Ill. 658; *Best* v. *Jenks,* 123 Ill. 447.) The rule pronounced in those cases is that unassigned dower is not an estate subject to transfer to a stranger but may only be released to the owner of the fee.

Under the view we take of the provisions of the Probate Act, Ida Wood, on the death of her husband, had a dower right in one third of all the lands of which he died seized, which she could release but not convey. A release of dower in the share of one tenant in common will not operate in law as a release of it in the share of another tenant in common to whom no such release is made. The effect of such release on the shares of those tenants in common to whom such release is given, is to rid their fee of the dower encumbrance with the result that such cotenant has his fee cleared therefrom, and in turn a portion of his fee passes to the widow whose dower has been barred. *Ruwaldt* v. *McBride, Inc.* 388 Ill. 285; *Hart* v. *Burch,* 130 Ill. 426; *White* v. *White,* 16 N. J. L. 202.

The release of Ida Wood to Mollie McCormick and others, children and descendants of the decedent, released her right to claim dower in the real estate, the fee to which was vested in her releasees, and she no longer had any interest in the real estate which she could convey. Not having released her dower right to Fred Wood and W. T. Wood, sons, and Ollie Wood Ewing, a granddaughter of Samuel Wood, deceased, all of whom owned an interest in the property, and not having exercised her right to perfect her dower in the undivided interest owned by them, she took a fee to one third of their respective interests which she conveyed to appellee by her warranty deed of

July 25, 1944. The remaining two thirds of the shares of Fred and W. T. Wood were, by their deeds of April 19 and 27, conveyed to appellee.

Counsel for the parties and *amici curiae* have propounded numerous other questions, the answers to which are not essential to, and cannot influence the decision of the questions before us, and while doubtless of interest and probably of assistance to the bar, this court cannot here indulge in *dicta*.

It was error to decree partition in accordance with the amended complaint. The decree of the circuit court is reversed and the cause remanded with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*