## HENRIETTA FARNAN

*v.*

## WILLIAM R. BORDERS.

*Filed at Mt. Vernon January 25, 1887.*

1. HOMESTEAD—*abandonment—what to be so regarded.* A widow having a homestead in premises left by her deceased husband, in 1878 rented the same, reserving a room in which she left her furniture, and went to St. Louis, with her three minor step-children. At the end of a year she sold her furniture and gave up the room, and at the end of two years she gave up housekeeping, but continued to board in St. Louis, her step-children having obtained situations. Seven years after leaving her homestead, she testified that she lived at St. Louis, Quincy and Milwaukee, about an equal time at each place; that she was located nowhere, and that when she got ready to settle she intended to occupy her homestead, but that her intentions were not definite when she would go back to it: *Held,* that she had lost her homestead by abandonment.

2. ASSIGNMENT OF ERROR—*as to matters not affecting party alleging error.* A party can not assign for error that which does not prejudice his or her rights. So a widow, on a bill for partition and the assignment of her dower, can not assign for error a matter affecting only the interest of a party whose title is claimed to have been purchased, pending the suit, by another one of the parties.

APPEAL from the Circuit Court of Randolph county; the Hon. GEORGE W. WALL, Judge, presiding.

Mr. JOHN MICHAN, for the appellant:

The occupancy required to hold a homestead may be by a tenant, for the benefit of the widow and minor children. *Walters* v. *People,* 21 Ill. 178; *Brinkerhoff* v. *Everett,* 38 id. 263; *Titman* v. *Moore,* 43 id. 169; *Browning* v. *Harris,* 99 id. 456; *Kenly* v. *Hudelson,* 99 id. 493.

If, as under the decisions, one can sell a homestead and reinvest the money in another homestead, and hold that under the law, then the occupancy by a tenant is an occupancy under the law; and if the alienation of a homestead by the widow is not an abandonment, then the appellant has not

abandoned her home. *Plummer* v. *White,* 101 Ill. 474; *Watson* v. *Saxer,* 102 id. 585.

The decisions of this court will be consistent with each other. The widow has the right to convey, as against the heirs. *McVey* v. *McQuality,* 97 Ill. 93.

If the purchaser can hold the homestead, why can not the widow hold and occupy through a tenant?

Messrs. A. G. & R. J. Goddard, for the appellee:

After the death of the husband, the widow, being under no disability, may abandon the homestead, precisely as could the husband. *Wright* v. *Dunning,* 46 Ill. 272; *Shepard* v. *Brewer,* 65 id. 383; *Clubb* v. *Wise,* 64 id. 157; *Buck* v. *Conlogue,* 49 id. 391; *Kingman* v. *Higgins,* 100 id. 319.

The widow can reside away from the property temporarily, with the intention of returning, and retain homestead, only by showing a necessary cause for so doing. *Wright* v. *Dunning,* 46 Ill. 272; *Buck* v. *Conlogue,* 49 id. 395.

The case of *Ferguson* v. *Woodworth,* 44 Ill. 374, held that an absence of three or four years was an abandonment.

Removal from State for fifteen months, is held to be an abandonment. *Maher* v. *McConaga,* 47 Ill. 392.

The case of *White* v. *Plummer,* 96 Ill. 394, and again in 101 id. 474, and other cases cited by appellant, are cases where homestead has been assigned, thereby giving notice to the world that a homestead exists at that date, and then a transfer of that right by the widow by deed,—one of the methods adopted by law for the transfer of homestead estates. But because that course may be pursued by the widow, it does not necessarily follow that an abandonment of the homestead can not take place.

There are two ways of terminating a homestead—by abandonment, and by conveyance. An abandonment is not a conveyance, and a conveyance is not an abandonment. A conveyance passes the estate to the grantee, and when abandoned, the heirs take the fee free of the estate.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This was a bill, originally filed on April 5, 1884, in the circuit court of Randolph county, by appellee against appellant, and Anna Farnan, Harry Farnan, Frank Farnan, and David Farnan for the partition of lots 87 and 96 in McClurken's addition to Sparta and for assignment of the widow's dower. Dr. James Farnan died, intestate, in October 1877, and left him surviving his widow, Henrietta Farnan, the appellant, and four children by a former wife, Harry, twenty-one years old, Anna nineteen years old, Frank seventeen years old, and David fifteen years old. At the time of his death he lived upon the lots, as his homestead. His son, Harry, was then in California. After his death, the widow lived upon these premises. with her step-children, Anna, Frank and David about eight months, when Anna left and went to St. Louis.

In August 1878 appellant moved away from Sparta to St. Louis, taking with her her two youngest step-children Frank and David Farnan. The question in the case is, whether she has a homestead in the premises in question. Appellee asserts and appellant denies, that there has been an abandonment of the homstead by the appellant, as widow of James Farnan. · The second section of the Homestead Exemption law provides, that "such exemption shall continue after the death of such householder for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead."

After appellant moved to St. Louis in August 1878, she kept house in that city for two years with her two step-sons. She then gave up housekeeping, but continued to board in St. Louis. Frank and David went to live with their sister, Anna, and their older brother, Harry. The three sons are in business for themselves, and Anna supports herself by teaching music. Appellant has not lived in Sparta since she left there in August 1878, but has rented the former homestead

and drawn the rents ever since. When she left, she reserved one room in the house, and kept some furniture in it for a year. At the end of the year, however, she sold the furniture and surrendered the room, in which it had been stored, to the tenant. Anna, Frank and David all swear, that she expressed to them the intention of never returning to Sparta, and, as matter of fact, they have never returned nor ever intended to return. She denies, that she ever expressed such intention, and claims, that she went to St. Louis for the purpose of educating the two youngest boys for business. The proof shows, however, that after their education was finished and they had secured business situations, she still continued to reside away from Sparta. She says, when testifying seven years after she had left Sparta: "I live at St. Louis, Quincy and Milwaukee about equal time at each place. * * * As for myself I am located nowhere. My intention has always been, that, when I got ready to settle down and go to housekeeping, I would occupy my own house at Sparta. My intentions are not definite as to when I may go to housekeeping. The youngest child became twenty-one years old September 12, 1883."

We think the facts in this case show an abandonment of the homestead by the appellant. Her purposes as to her future course have been neither definite nor fixed. An intention to return and occupy the former home, as a homestead, is not clearly manifested by the surrounding circumstances. (*Titman* v. *Moore*, 43 Ill. 169.) It does not appear from the evidence, that the appellant removed from Sparta for a temporary purpose with the intention of returning and occupying the house there, as a homestead. (*Howard* v. *Logan*, 81 Ill. 383.) On the contrary, her conduct and all the facts and circumstances disclosed by the evidence, without taking into consideration the testimony as to her own declarations upon the subject, point unmistakably to the conclusion, that she left Sparta with the intention of remaining away permanently.

The proof shows, that appellee was the owner of an undivided one-fourth part of the premises at the beginning of this suit, having purchased the interest therein of Harry Farnan. During the pendency of the suit he bought the shares of Anna, Frank and David Farnan, and the final decree was so modified as to recognize this change in the interests of the parties. Appellant complains, that there was not sufficient legal evidence before the court below to justify it in finding appellee to be the owner of the three-fourths, inherited by Anna, Frank and David. The latter persons alone could take advantage of such an error, if it existed. They, however, have assigned no errors upon the record, and whether or not the court decreed correctly as to their rights is a matter of no concern to appellant. A party can not assign for error, that which does not prejudice his or her rights. *Ransom* v. *Henderson*, 114 Ill. 528.

The decree of the circuit court is affirmed.

*Decree affirmed.*