## J. M. Brown v. O. R. Morgan, Adm'r de Bonis Non, etc.

1. LIMITATIONS—*Sale of Real Estate to Pay Debts.*—Courts of this State have by analogy adopted the period of seven years as the time within which proceedings by an administrator to pay the debts of his intestate must be commenced after the grant of letters, unless the delay is satisfactorily explained, and when not so explained delay will amount to such *laches* as will bar the relief sought.

2. SAME—*Excuses for Delay.*—As to what is a satisfactory explanation or excuse for a delay of more than seven years depends on each particular case.

3. ESTOPPEL—*Of a Widow to Have Real Estate Sold to Pay an Award.*—A widow, by her action in procuring the estate of her deceased husband to be settled as insolvent, and accepting all the assets in lieu of her award, by conveying the premises to one and assigning her allowance as an award to another, estops herself, and also her assignee, from having the real estate sold to pay the award.

4. ASSIGNMENT—*Of an Award—Rights of the Assignee.*—The assignment of her award by a widow, give to the assignee no more equitable right to have real estate sold to pay it than the widow at the time of the assignment had.

5. HOMESTEAD—*What is an Abandonment.*—Where a widow occupies premises of her deceased husband as a homestead, for a period of five years or so after the death of her husband, and then leaves it, saying she would never return, and would never live there again, etc., lets it lie idle for one year, after which she collected rent for a time, let it be sold for taxes, and then sold it to another, *it was held* to be an abandonment.

**Proceedings to Sell Real Estate to Pay Debts.**—Trial in the Circuit Court of Johnson County; the Hon. ALONZO K. VICKERS, Judge, presiding. Hearing and decree for complainants; error by one of the defendants. Heard in this court at the February term, 1899. Reversed and remanded, with directions. Opinion filed September 5, 1899.

MR. JUSTICE CREIGHTON delivered the opinion of the court. This was a petition in the Circuit Court of Johnson County, by defendant in error, as administrator *de bonis non* of the estate of William H. Crider, deceased, for an order to sell real estate to pay the debts of said estate. Plaintiff in error, being a defendant in the Circuit Court, resisted the petition and set up *laches* as a bar. The court upon final hearing entered a decree granting the prayer of

the petition. There were a number of defendants to the petition, but they all submit to the decree rendered by the Circuit Court, except plaintiff in error, who brings the case to this court.

Deceased died intestate February 3, 1879, possessed of little personal property, and seized of the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, and the N. W. $\frac{1}{4}$ of the S. E $\frac{1}{4}$, all in Sec. 3, T. 13 south, range 2 east, in Johnson county, Illinois. This property was the homestead of deceased, upon which he resided, with his family, at the time of his death, and was at that time worth about $600, and has not at any time since the death of deceased, been worth as much as $1,000. Deceased left him surviving Sarah G. Crider, his widow, and Josephine Lambert, Olivet Hooker and Dock Crider, his children.

On February 10, 1879, John Harrison was appointed administrator, and, after causing to be filed and approved an appraisement of the property, resigned. On June 9, 1879, Sarah G. Crider, the widow, was appointed to succeed him, and on the 4th day of February, 1881, she filed an inventory of the property of said deceased, including the personal property embraced in the appraisement filed by her predecessor, as well as the real estate above described, and on the 24th day of February, 1881, filed her final report, which was duly approved by the court, and she discharged. No dower was ever assigned to the widow, nor homestead set off to her, for the reason that the whole of said real estate was at no time worth to exceed $1,000. Long prior to the commencement of this proceeding, all the said children of deceased had died intestate, leaving them surviving a large number of children and grandchildren, who were all grandchildren and great-grandchildren of deceased, and interested as heirs in said premises. On the 18th day of October, 1891, certain of these heirs deeded their interest in said land to James M. Brown, plaintiff in error herein, and on the 25th day of January, 1892, and the 8th day of February, 1892, respectively, certain others of said heirs also deeded their interest to said Brown. These deeds were

almost immediately placed on record. Some time prior to February 9, 1891, Sarah G. Crider, the widow, had deeded the premises to A. J. Gore, who, at the time of Brown's purchase from the heirs, was in possession under his deed from the widow, but during the year 1893 he surrendered possession to Brown, and Brown at once commenced to cultivate the land and to improve it. On July 6, 1894, O. R. Morgan, defendant in error, procured from Sarah G. Crider, the widow, an assignment to him of the balance due her from the estate of deceased, on her widow's award, and on the 23d day of July, 1894, said O. R. Morgan was appointed administrator *de bonis non* of the estate of said William H. Crider, deceased. On the 13th day of August, 1894, Sarah G. Crider, the widow, died, and in February, 1895, this proceeding was commenced. The debts for which it is sought to sell the lands are as follows:

" List of claims and judgments allowed against the estate of William H. Crider, deceased, together with interest thereon:

1. Second class claim—Balance due on widow's award, after deducting appraised value of personal property, including interest on the balance due said widow....................$603 52
2. Fifth class claim—Dr. J. N. Benson, including interest thereon.......................... 11 23
3. Seventh class claim—Dr. George Bratton, including interest thereon................. 33 92
4. Seventh class claim—Dr. George Elkins, including interest thereon..................... 11 23
5. Seventh class claim—including interest thereon due to C. A. Elkins...... ................ 48 54
6. Seventh class claim—Bain & Jackson, including interest thereon........................... 125 44
7. Seventh class claim—Carson estate, including interest thereon........................... 61 18
8. Seventh class claim—Sidwell estate, including interest thereon.......................... 85 60

Total claims, judgment and interest...........$970 66

While there is no statute of limitations directly applicable to this class of cases, still the courts of this State have, by analogy, adopted the period of seven years as the

time within which such proceedings shall be commenced after the grant of letters of administration, unless the delay shall be satisfactorily explained by the petitioner. In McKean et al. v. Vick, 108 Ill. 373, it is said: It may be regarded the settled doctrine of this court that when it is not satisfactorily explained, delay for seven years after the granting of letters of administration, in presenting a petition of this character, is such *laches* as will bar any relief under it."

As to what is satisfactory explanation, or excuse for a delay of more than seven years, there is no general rule. Each case must be judged upon its own merits.

It is contended by defendant in error that the fact that the widow had a homestead in the premises, and that the premises were not worth at any time to exceed $1,000, is a sufficient explanation for not proceeding during the life-time of the widow. Under some circumstances, such state of facts would be sufficient excuse and satisfactory explanation, but "each case must be judged upon its own merits." The administratrix inventoried all the assets of the estate, both personal and real, and after all the claims were allowed, made report of the facts to the court, and the court found and declared the estate to be an insolvent estate, and on February 24, 1881, closed the administration and discharged the administratrix, in accordance with the provisions of the statute appearing at Sec. 59 of Chap. 3, Hurd's Revision of 1897. This disposition of the estate, was made by the court upon report, and motion, of the widow, who was then administratrix. All parties acquiesced in the disposition thus made of the estate until in July, 1894, when defendant in error—having procured an assignment to him, by the widow, of the unpaid portion of her award, without claiming the existence or discovery of any "new assets"— procured his appointment as administrator, and after the death of the widow filed his petition herein.

The widow occupied the premises as a homestead until the year 1884, when she left it, saying she would never return to it; that she never would live there again; that she did not want to have anything to do with it. The evidence shows that she made such statements more than fifty times.

One year it lay idle, and some years she collected some rent for it, for a time. She let it sell for the taxes of 1887 and 1888, and finally, in 1891, she deeded it to A. J. Gore, who, on February 9, 1891, redeemed it from tax sale, and was in possession of it under his deed when he surrendered it to plaintiff in error. After the widow left the premises in 1884, declaring her intention never to return to it, she never did return, except that, after she had deeded it to Gore, she went on the place to board with a tenant of Gore, who was occupying it that time, and boarded with the tenant three months, paying her board.

The unpaid balance of the widow's award constitutes substantially two-thirds of the whole indebtedness for which it is sought to sell the land. Independent of any question of *laches*, we are of opinion that the widow was clearly estopped, prior to and at the time she assigned to defendant in error, from having the land sold to pay her award; first, by her action in procuring the estate to be settled as an insolvent estate, and accepting all the assets in lieu of her award; and second, by her deed to Gore; and her assignment to defendant in error gave him no more equitable right than she herself at the time had. We are also of opinion that the evidence shows an abandonment of the homestead by the widow in 1884. Farnan v. Borders, 119 Ill. 228, in a case wherein the widow in 1878, rented the homestead left her by her deceased husband, and went to St. Louis for the purpose of educating her two youngest sons for business; after their education was finished she continued to reside away from her homestead, though she drew the rents all the time. She had been away seven years when the question arose as to whether she had abandoned her homestead. She testified :

" I live at St. Louis, Quincy and Milwaukee—about equal time at each place. As for myself, I am located nowhere. My intention has always been that, when I got ready to go to housekeeping, I would occupy my own house. My intentions are not definite as to when I may go to housekeeping."

The court held that this widow had abandoned her homestead. We are of opinion that all the claims for the pay-

ment of which it is sought to sell the land in question are ·stale; that under all the facts of this case, the right to have an order to sell is barred by *laches.*

The judgment and decree of the Circuit Court is reversed, in so far as they in any way affect the interests of plaintiff in error as they existed at the time of the rendition of said judgment and decree, and the cause is remanded, with directions to the Circuit Court to enter a judgment and decree not inconsistent with this opinion.    Reversed and remanded.