(No. 27360.—

CLEMENT O'MALLEY, individually and as administrator, Appellee, *vs.* BEATRICE DEANY *et al.,* Appellants.

*Opinion filed November 16, 1943.*

STEELY, STEELY, GRAHAM & DYSERT, and ACTON, AC-
TON, BALDWIN & BOOKWALTER, (W. M. ACTON, and
WALTER V. DYSERT, of counsel,) for appellants.

WALLACE J. BELL, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

This case is an appeal from the decree of the circuit
court of Iroquois county awarding partition and an ac-
counting. The principal issue in the case is whether a
deed by appellant Julia O'Malley to appellee, Clement

O'Malley, passed title to a part of the land involved, and therefore a freehold is involved, giving us jurisdiction on direct appeal.

In March, 1920, John O'Malley and his wife, Julia O'Malley, became the owners in fee of one hundred sixty acres of land as tenants in common. John O'Malley died intestate December 18, 1939, and left him surviving Julia O'Malley, his widow, and Beatrice Deany and Clement O'Malley, his children. December 27, 1939, Julia O'Malley executed a quitclaim deed to Clement O'Malley for all of her interest in the land, reserving to herself a life estate therein, which said deed was placed on record June 4, 1942. The bill for partition in this case was filed July 15, 1942, by Clement O'Malley and alleged that by reason of the death of his father, and the deed aforesaid, he was the owner of an undivided five-sixths of said land, subject to the life estate of his mother, and that Beatrice Deany was the owner of an undivided one-sixth thereof, and Julia O'Malley, appellant, was entitled to a life estate in the undivided four-sixths thereof; and that the land was subject to certain encumbrances, and prayed partition.

Appellant Julia O'Malley filed an answer alleging the cause was prematurely filed because there was no showing the personal estate was sufficient to pay the debts, and denied the rights and interests of the parties were correctly set out in the complaint, and that plaintiff was not entitled to partition. She also filed a counterclaim setting out the rights of the respective parties under the statute, and alleging she was the owner of one half of the land by purchase, and that her children and herself each were seized in fee of an undivided one-sixth thereof by descent because of the death of John O'Malley; and that in addition thereto she was entitled to a homestead estate in said premises of the value of $1000. The counterclaim further alleged she did not knowingly and understandingly make and deliver

to her son, Clement O'Malley, the deed afore-mentioned, and that it was without any good, valuable or sufficient consideration; that Clement O'Malley occupied a fiduciary relationship to her, and that the deed was procured through false and fraudulent representations, and prayed judgment that the deed be declared null and void, and that Clement O'Malley, who had been in possession of said land since the death of his father, be required to account, and that partition be made among the owners under the direction of the court. The answer of Beatrice Deany was substantially the same as that of her mother.

The answer to the counterclaim denies Julia O'Malley was entitled to a homestead interest in the premises, and denies the counterclaimant is entitled to relief, except that appellee admits he had occupied the premises since the death of the deceased, with the consent of his mother, and is ready and willing to account. His reply to the answers of both defendants denies the case was prematurely filed; says that he has occupied and farmed said premises and paid out all money realized for repairs, taxes and installments of principal and interest on the mortgages, and for the support of the defendant, Julia O'Malley; and is ready to make an accounting of such income. The mortgagees filed answers simply showing the interest they have in the premises. Upon a hearing had in open court before the chancellor a decree was entered finding the plaintiff was entitled to partition, as prayed, and ordered to account for the sum of $372.15.

The principal issues involved are whether the quitclaim deed made by the mother to the plaintiff was procured by fraud, and whether, if properly delivered, it conveyed any of the interest owned by John O'Malley at the time of his death. The contention is made by the mother that the deed was fraudulently obtained because a fiduciary relationship is said to exist between her and the son, and

she invokes the well-settled principle that where such relationship exists a deed is presumptively void and the burden lies upon the person claiming the benefits thereof to overcome such presumption by evidence.

In a memorandum opinion the chancellor made a finding that a fiduciary relationship did not exist between the mother and son at the time of the delivery of the deed. The evidence shows that about two weeks after the death of the father, Clement and his mother went to the county seat to have an administrator appointed for the estate of John O'Malley; that prior to the death of the latter the son was operating the farm, sold all crops and paid all of the expenses; that at the time he moved upon the place in 1933 the farm was heavily mortgaged, and that the appellant Julia O'Malley and her husband were unable to keep up the payments, as they owed other debts and there were judgments against John O'Malley. Shortly after Clement moved upon the farm it was refinanced with a first and second mortgage amounting to $14,500 upon the one hundred sixty acres of land, which then had a value of approximately $100 per acre, or perhaps a little more, and the proceeds were used to pay the former mortgage and the father's debts.

According to the testimony of the mother, when they arrived in Watseka they went to the office of the agent for the mortgagee, who advised seeing a lawyer, and that at the latter's office the son, Clement, handed her a paper and told her to sign it, and that it was not read to her, and that she did not know it was a deed, and that she had no conversation with her son about making him a deed; that she signed two papers at the time, but thought they were papers in connection with the administration; that she never learned it was a deed until after it was recorded in June, 1942, and that she then demanded it back. On the other hand, the son testified that the mother

wanted to deed the place to him because he had taken care of it, improved it and saved it, and because she might die suddenly as her husband had. While they were in the attorney's office she was under the impression she owned the entire place, because she thought it was owned in joint tenancy. He admits he was to assume the mortgages and furnish a home for his mother, and asserts the deed was knowingly made, without any fraud upon his part.

The lawyer who prepared the deed, and who was engaged to act as attorney for the administrator, testified the mother and son seemed to be in perfect harmony; that the deed was prepared and read to the appellant Julia O'Malley; that he told her what it was, and that it was prepared at her request, and that she understood the transaction. He further testified she was under the impression the land was held in joint tenancy, but that he made an examination of the records and found she owned an undivided one-half interest; that they talked about the mortgages on the premises, and that it was at his suggestion the reservation of a life estate was placed in the deed. His testimony further shows the mortgages on the premises were discussed, and that as a part of the consideration the son was to assume and pay the indebtedness; that the details of her support during her lifetime were not gone into with particularity, but that she was living with the son, and was going to continue to live with him. This testimony discloses that inquiry was made as to the state of the title, and what the parties desired, and indicates the mother understandingly made the deed in question, without overreaching upon the part of the son.

The testimony also discloses that during the depression period existing about the time the son moved upon the premises the father and mother lived in town, and that the income was not sufficient to pay the taxes and interest charges; that the son moved upon the premises; procured

a refinancing of the mortgages; made improvements to the extent of $2000, or more, at his own expense, and has paid the taxes and interest charges, and has reduced the mortgages to the extent of approximately $3300.

The chancellor heard the testimony of the witnesses, and his finding upon the question of the existence of a fiduciary relationship, and the other facts in the case, is entitled to great weight and will not be disturbed unless it is clearly against the weight of the evidence. (*Roche* v. *Roche*, 286 Ill. 336; *Elsasser* v. *Miller*, 383 Ill. 243.) A fiduciary relationship between parent and child does not exist as a matter of law, (*Shuster* v. *Krueger*, 371 Ill. 543,) but must be established by evidence. But, assuming the mother's testimony does show a fiduciary relationship, still the proof is sufficient to show no advantage was taken of that relationship, and the rights of the mother were adequately protected. She was an old woman, then about seventy-seven years of age, unable to operate a farm encumbered with a heavy mortgage, and would realize no substantial income from it, and it might be lost but for the industry and work of the son. She was entitled under the arrangement to a life estate in whatever property the deed conveyed. While the evidence does not disclose that she received or demanded to receive any of the rents or profits, it does show she resided with the son until July 1, 1942. There is evidence showing ill-feeling between John and Julia O'Malley and their daughter at the time of the father's death.

We are not prepared to overrule the finding of the court that there was no overreaching of the mother, and his finding that the deed should not be set aside. When the evidence is examined it is clear that, except for the efforts of the son, the place would have been lost through mortgage foreclosure, or an execution sale would have been had under conditions that would have left little if any equity in the premises. We think the chancellor's find-

ing there was no fiduciary relationship between the parties, and no proof of fraud in the execution and delivery of the deed, is supported by the evidence.

The claim of appellant that the quitclaim deed did not convey any interest in John O'Malley's undivided one-half interest in the farm presents a different question. At the time this deed was executed the law provided that upon the death of a person leaving a wife and children the wife is entitled to an absolute estate in a one-third part thereof, upon waiver of the right of dower. The waiver of dower can be effected either by filing and recording a writing expressing the intention to waive dower, or by failing to file an election to take dower within one year after letters of administration are issued. (Ill. Rev. Stat. 1939, chap. 39, sec. 1, subsec. 4.) We have had occasion several times to pass upon the nature of a husband's or wife's interest in the estate of a deceased spouse during the period of time within which an election to waive dower is permitted, and we have held that an election in the manner provided by statute is necessary to vest the interest of the surviving spouse in the real estate of the deceased. *Steinhagen* v. *Trull,* 320 Ill. 382; *Braidwood* v. *Charles,* 327 Ill. 500.

It is also the law a quitclaim deed does not pass after-acquired title, or a future interest in fee that might be obtained afterwards by waiving dower. (*DuBois* v. *Judy,* 291 Ill. 340; *Thornton* v. *Louch,* 297 Ill. 204; *Citizens National Bank* v. *Glassbrenner,* 377 Ill. 270.) Since Julia O'Malley had not waived dower in her husband's undivided one-half interest in the land at the time she executed a quitclaim deed to her son, Clement, she did not have such an estate that she could convey by deed, and consequently no interest was conveyed to the son, Clement, of any part of his father's interest in the land, and Julia O'Malley is not estopped at this time to claim that no interest was conveyed.

In this situation, the interests set forth in the complaint for partition were inaccurate. It appears that Julia O'Malley did not file a waiver of dower in the manner provided by statute, and hence one year after her husband's death she became the owner in fee of a one-third of his interest in the land, which was not conveyed by the quitclaim deed. The title to the whole one hundred sixty acres would therefore be vested as follows: Julia O'Malley one sixth; Beatrice Deany one sixth; Clement O'Malley four sixths, with Julia O'Malley retaining a life estate in the three-sixths interest conveyed subject thereto by her quitclaim deed.

We have not discussed the rights of appellant Beatrice Deany, because no contentions are made in her behalf different than those of Julia O'Malley. The accounting was ordered by the court upon the basis that the mother retained no fee interest in the land, and this will, of course, be changed by our holding that she still retained the fee interest in an undivided one-sixth.

There are other questions raised by appellants unnecessary to pass upon at this time because the account will have to be restated in accordance with the interests of the parties as fixed in this opinion. The claim of homestead of Julia O'Malley in her husband's land can also be reconsidered, in view of the different state of title found by this court, and evidence that may be offered with respect thereto.

The decree of the circuit court of Iroquois county is reversed and remanded, with leave given to the parties to amend their pleadings, and to proceed in a manner not inconsistent with the views expressed herein.

*Reversed and remanded.*