Evelyn T. Siekmann and Evelyn T. Siekmann, Executor of the Estate of Jacob Siekmann, Plaintiff-Appellee, v. Elois Siekmann, Defendant-Appellant.

Gen. No. 64-15.

Fifth District.

November 20, 1964.

Paul Farthing, and Eugene H. Widman, both of Belleville, for appellant.

Turner, Holder & Ackermann, of Belleville, for appellee.

DOVE, P. J.

On May 21, 1909, Jacob and Florine Siekmann, husband and wife, became the owners, as tenants in common, of Lot 16 in Block 14 in Edgemont, East St. Louis, Illinois. This lot was improved by a dwelling house in which the owners lived until the wife, Florine, went to a hospital in 1937, and there died, intestate, on March 3, 1938, leaving her husband, Jacob, and their son, Elois, only heirs at law her surviving. After Florine entered the hospital in 1937, Elois, the surviving son, and his family moved into the home with the father, Jacob, and they lived there until December 1939. Thereafter Jacob and Elois and Elois' family vacated the property and moved to property located in Signal Hill Subdivision in East St. Louis. On August 24, 1940, Jacob remarried, and on May 10, 1941, he and his then wife, Evelyn, returned to Jacob's former home, being the property involved in this litigation, and while living in this property with his wife, Evelyn, Jacob died testate on February 7, 1961, leaving Evelyn, his widow, and Elois, his son, him surviving.

By the provisions of his will, Jacob bequeathed $5 to his son and the residue of his estate to his widow. On April 17, 1961, Jacob's will was duly admitted to probate, and his widow, Evelyn T. Siekmann was appointed and qualified as executor thereof.

On July 6, 1961, Evelyn T. Siekmann, individually and as executor of her husband's will, filed the instant complaint for partition of the premises, making her stepson, Elois Siekmann, sole defendant. The defendant answered the complaint and filed a counterclaim. By his counterclaim he sought to recover a money judgment in the sum of $4989.39 against

Evelyn Siekmann for rent of the premises from March 3, 1938 to March 3, 1961. A reply was filed to this counterclaim, and the issues made by the pleadings were referred to a Special Master to take the evidence and report his conclusions to the court. The Special Master did so, and a decree was rendered in accordance with the recommendations of the Master. To reverse this decree defendant appeals, and plaintiff has filed a cross-appeal.

The decree appealed from approved the Special Master's report and found that the material allegations of the complaint were proven and were true; that at the time of the death of Jacob Siekmann he was the owner of an undivided two-third interest in the described premises, plus an estate of homestead from March 3, 1938, the date of his former wife, Florine's death, until he died on February 7, 1961; that during all this time Jacob paid all taxes, insurance and also paid for the necessary repairs and improvements thereon, and received no use or benefit of the premises in greater proportion than his interest therein; that therefore, defendant is not entitled to an accounting or claim against the plaintiff, and his prayer for judgment for $4989.39 was denied; that plaintiff is chargeable with rent for the use and occupancy of said premises from February 7, 1961 at the rate of $200 per year, less one-third of the taxes, insurance premiums and repairs paid by her since the date of Jacob's death; that plaintiff owns a homestead estate of $2,500 value in the undivided two-thirds interest in said premises, which her husband owned at the time of his death; that plaintiff is also seized of a two-third interest in said premises subject to her said homestead estate; that defendant is the owner in fee of an undivided one-third of said premises and has a lien on plaintiff's two-third interest therein for rent at the rate of $200 per year, less one-third of the

amount plaintiff has paid, since February 7, 1961, for taxes, insurance and necessary repairs; that the undivided interests of both parties are subject to any deficiency that may exist in the administration of Jacob's estate costs and a reasonable attorney fee in favor of the plaintiff for her attorneys fees in this cause, to be subsequently determined by the court. The decree appointed commissioners to make partition according to its findings, and if unable to do so, then to appraise the value of the premises and report its conclusion to the court.

Paragraph five of the original complaint filed herein alleged that the parties hereto were seized of the premises involved herein, and that Evelyn T. Siekmann is seized of an undivided two-thirds thereof, subject to the debts, claims and costs of administration of the estate of Jacob Siekmann, and that Elois Siekmann is seized of an undivided one-third interest therein, subject to the right of homestead of Evelyn T. Siekmann, and subject to one-third of the debts and claims against the estate of Florine Siekmann, paid by Jacob Siekmann. The answer of the defendant admitted the allegations of this paragraph, except he denied "any and all allegations of homestead of Evelyn T. Siekmann."

In his counterclaim, which was filed with defendant's answer on August 7, 1961, Elois Siekmann alleged that Jacob and Florine Siekmann were the owners in fee of the premises involved herein; that Florine died on March 3, 1938, and left her surviving as her only heirs at law her husband and son, and that no administration was taken on her estate; that the husband, Jacob, died on February 7, 1961, and that there is due and owing Elois Siekmann one-third of the rental value of the premises from March 3, 1938 to March 3, 1961, the sum of $5,577.96, or rent at $60.53 per month, less one-third of the taxes from 1938 to 1959, inclusive,

being $535.57, and one-third of the insurance being $53, or a total of $588.57, leaving a net amount of $4,989.39 due defendant, as rent, from the plaintiff. The counterclaimant prayed judgment against Elois Siekmann for this amount. The answer to the counterclaim admitted the ownership of the property, and the death of the owners, but denied that any sum was due defendant from plaintiff, as alleged, for rent.

It is insisted by appellant that Jacob abandoned his homestead estate in these premises when he left the same in December, 1939, after the death of his first wife, and remained away until after his remarriage, and until May 10, 1941. The record does not disclose whether the premises were or were not occupied during this period of sixteen or seventeen months. From May 10, 1941 until his death on February 7, 1961 this property was the home of the plaintiff and her husband, Jacob Siekmann. Counsel for appellant state that under these facts Jacob "cancelled any homestead estate in his wife's half interest in the property when he left this property in December, 1939."

Upon the death of his wife, Florine, on March 3, 1938, Jacob having failed to file an election to take dower, received as his absolute estate, in lieu of dower, one-third of Florine's undivided one-half interest in the premises involved herein, which interest, in addition to the undivided one-half he then owned, increased his interest to an undivided two-thirds, and this is the interest which passed to plaintiff under Jacob's will, and this is the interest she claimed under her complaint and which defendant in his answer and counterclaim recognized.

After the evidence had been taken and the Special Master's supplemental report had been filed, and after the court had entered its order on April 23, 1963, that all objections to the Special Master's report should stand as exceptions, the defendant by leave of

court, withdrew his answer to Paragraph five of the complaint, wherein he admitted that plaintiff was the owner of an undivided two-thirds of the premises involved herein, and that he was the owner of the undivided one-third interest therein, and in lieu of this admission denied all the allegations of this paragraph of the complaint, and as an affirmative defense alleged that he was answering as a creditor and not as an heir of Jacob Siekmann, and charged that, as executor, plaintiff filed her inventory of the real and personal estate in the Jacob Siekmann estate in the Probate Court of St. Clair County; that the proof disclosed that the total claims allowed in the Probate Court were in excess of the value of the personalty, excluding her widow's award of $1,500, and also the 1960 and 1961 taxes on the property and the costs of administration; that under Paragraphs ten and twelve of Chapter 59 of our statutes, the will of Jacob Siekmann is fraudulent and void; that the plaintiff did not correctly allege the interest of the parties to this proceeding, and is therefore not entitled to the allowance of an attorney fee.

 It is appellant's theory, says his counsel, that appellant is defending this suit and prosecuting his counterclaim as a creditor of Jacob Siekmann; that the provisions of Sections 10 and 12 of Chapter 59 of our Statute of Frauds and Perjuries renders Jacob's will void and fraudulent as to appellant, inasmuch as it was stipulated that the personal estate of the testator is less than the claims allowed against his estate. In support of this contention, counsel cite Durflinger v. Arnold, 329 Ill 93, 160 NE 172; Straus Brothers Co. v. Rush, 241 Ill App 216; In re Hinshaw's Estate, 19 Ill App2d 239, 153 NE2d 422, and Ryan v. Jones, 15 Ill 1. The record shows that the will of Jacob Siekmann has been duly proven and admitted to probate, and the time for presenting claims against

269

the estate has elapsed, but it does not follow that because the allowed claims are in excess of the personal estate coming into the hands of the personal representative of decedent, that the provision of the will devising testator's real estate to appellee is invalidated. What Section 12 of the Statute of Frauds and Perjuries provides is that when any land is devised to any devisee, and the personal estate of the devisor shall be insufficient to discharge the just demands against the devisor's estate, such devisee shall be liable to the creditor of the devisor to the full amount of the lands so devised to the devisee. (Ill Rev Stats 1963, c 59, § 12.)

In support of appellant's contention that plaintiff is individually liable to appellant for rent from May 10, 1941 to February 7, 1961, counsel argue that rent is a family expense item; that appellant was the owner of an undivided interest in the premises when appellee and her husband took possession of the property on May 10, 1941; that the evidence discloses that the average annual rental is $600 for the years from March 3, 1938, the date of Florine's death, to February 7, 1961, when Jacob died; that the amount due appellant for rent, and which he seeks to recover from plaintiff by his counterclaim, is $300 per year, for this period of almost twenty years, less the amount paid by Jacob for taxes, necessary repairs and insurance.

The statute provides that when one or more tenants in common in real estate shall take and use the profits or benefits thereof, in greater proportion than his interest, such person, or his executor, shall account therefor to his cotenant. (Ill Rev Stats c 76, § 5.) The Special Master, and the decree, found that Jacob Siekmann received no use or benefit of the premises in greater proportion than his interest therein and that therefore defendant is not entitled to an accounting and consequently dismissed the counterclaim, and

denied defendant a judgment for the $4989.39 he sought to recover.

It is the theory of appellee that upon the death of Florine Siekmann, her spouse, Jacob, inherited one-third of her one-half interest in the premises involved herein, and also a homestead estate therein, and that until the payment or tender to him of the value of this homestead estate he was entitled to the exclusive enjoyment of the property, and under no obligation to pay rent on the interest Elois Siekmann inherited from his mother. In support of this contention, appellee cites Powell v. Powell, 247 Ill 432, 93 NE 432. It appeared in that case that Ann Powell died intestate on February 22, 1907, leaving her husband and six children, and a daughter of a deceased son, her surviving. At the time of her death she was the owner of a house and lot in Peoria, which was occupied by her and her husband as a homestead at the time of her death. Thereafter, Patrick Powell filed his complaint and its alternate prayer was for the assignment of his homestead estate and the charge was made that he had been deprived of the use of his homestead by the wrongful conduct of some of his children and requesting a finding as to the amount of rent the children should pay him for the premises during the time they were occupied adversely to him after the death of his wife. The trial court entered a decree appointing commissioners to set off his homestead and required the children to pay their father $6 per month for use of the premises so occupied by them without his consent. The commissioners so appointed reported that the premises were so situated that homestead and dower could not be assigned and valued the premises at $2,400. This report was approved by the court and a further decree entered, which found that none of the heirs of Ann Powell had taken any steps to have a homestead and dower of Patrick Powell assigned,

271

and decreed that he, Patrick, had the right to occupy the homestead free from any interference of the heirs. The heirs appealed in order to obtain a review of the decree which adjudged that Powell was entitled to the exclusive possession of the homestead.

In affirming this decree, the court traced the history of the homestead law, cited several cases, and stated that where the homestead premises were worth less than $1,000 or where it had been assigned to the surviving spouse, no one would seriously claim that the adult heirs or devisees could interfere with the exclusive enjoyment of the homestead by the surviving husband or wife. The statute at that time exempted a homestead to the extent and value of $1000. The court then stated that the residence and lot involved in the Powell case were worth $2400, and were so situated it could not be divided, and the surviving husband refuses to assent to its sale, and insists upon his right to occupy it to the exclusion of the other heirs. In the course of its opinion, referring to the statute, the court said, omitting citations, (pp 438, 439) : "There is nothing in these statutory provisions that expressly authorizes the heirs or devisees of the deceased householder to compel the surviving husband or widow to vacate, release, abandon or sell the homestead where it is not susceptible of assignment, and is of greater value than $1,000. Still in the construction of the Homestead Law, which expressly limits the extent of the homestead estate to $1,000, in connection with other provisions of the statute, this court has held that the surviving husband or widow is not entitled to the exclusive possession of an unassignable homestead which is worth more than $1,000, and that a court of equity, under its general chancery powers, independently of the Partition Act, had jurisdiction to enter a decree adjusting the respective rights of the heirs or devisees and the party entitled to the homestead

272

————. Applying these authorities to the facts presented by this record, appellants would clearly be entitled to extinguish the homestead of Patrick Powell by paying or tendering to him the value of his homestead estate. But appellants have neither paid nor offered to pay appellee anything for his homestead, but, refusing to do so, are insisting upon the right to occupy a substantial portion of the dwelling house forcibly and against the will of appellee. In this situation the court below properly decreed that appellants had no right to take possession of the house, or any part of it, and exclude appellee therefrom by force and intimidation. If appellants desire to extinguish the homestead, the rule announced in the authorities above cited provides a lawful procedure for such purpose. Until such proceedings are had and until the payment or tender to appellee of the value of his homestead, he is entitled to the exclusive enjoyment thereof, regardless of its value." The court then concluded: (p 441) "We have already seen, from the situation of this property, that no assignment of such homestead or dower is practicable. Appellee is entitled to the possession of the whole of these premises. He could get no more by any proceeding to assign his homestead and dower. The rent allowed him is intended to compensate him for the loss of the use of such homestead during the time it was occupied by appellants adversely to him."

In O'Malley v. Deany, 384 Ill 484, 51 NE2d 583, it appeared that John O'Malley and his wife, Julia, became the owners of a farm as tenants in common. John O'Malley died intestate on December 18, 1939, leaving him surviving, Julia, his widow, and two children, Beatrice Deany and Clarence O'Malley. On December 27, 1939, Julia O'Malley executed a quitclaim deed to her son, conveying to him all her interest in the farm, reserving to herself a life estate therein.

On July 15, 1942, Clarence filed his bill for partition, alleging that by reason of the death of his father and the deed aforesaid, he was the owner of an undivided five-sixths of said land, and that his sister, Beatrice, was the owner of the remaining one-sixth interest therein. The trial court so held and Beatrice Deany appealed. In reversing the decree, the Supreme Court stated that at the time the mother quitclaimed her interest in the farm to her son, the law provided that upon the death of a person leaving a wife and children, the wife is entitled to an absolute estate in a one-third part thereof, upon waiver of the right of dower; that the waiver could be effected either by filing and recording a writing expressing the intention to waive dower, or by failing to file an election to take dower within one year after letters of administration are issued. (Ill Rev Stats 1939, c 39, § 1, subsection 4.)

The court then cited Steinhagen v. Trull, 320 Ill 382, 151 NE 250, and Braidwood v. Charles, 327 Ill 500, 159 NE 38, to the effect that an election in the manner provided by statute is necessary to vest the interest of the surviving spouse in the real estate of the deceased. The court then held that the quitclaim deed executed by Julia to her son did not pass after acquired title or a future interest in fee that she might have acquired afterwards by waiving dower; that since she had not waived dower in her husband's undivided one-half interest in the farm at the time she executed the quitclaim deed to her son, she did not have such an estate that she could convey by deed, and consequently no interest was conveyed to her son of any part of his father's interest in the land. "In this situation," continued the court (p 492), "the interests set forth in the complaint for partition were inaccurate. It appears that Julia O'Malley did not file a waiver of dower in the manner provided by statute, and hence, one year after her husband's death, she became the

274

owner in fee of a one-third of his interest in the land, which was not conveyed by the quitclaim deed. The title to the whole one hundred sixty acres would therefore be vested as follows: Julie O'Malley, one-sixth; Beatrice Deany, one-sixth; Clement O'Malley, four-sixths; with Julia O'Malley retaining a life estate in the three-sixths interests conveyed subject thereto by her quit-claim deed."

It is true that in Krile v. Swiney, 413 Ill 350, 109 NE 2d 189, where it appeared that the owner of a tract of land died intestate leaving no child or children or descendants of deceased children, but leaving a surviving spouse, who thereafter died intestate less than ten months after letters of administration were issued on the estate of the owner, the surviving spouse having died without having, during her lifetime, elected to take dower in the real estate in the manner provided by statute, it was held that the surviving spouse, on the death of the owner, inherited an absolute fee interest in one-half of the land, and that upon the death of the surviving spouse within ten months of the issuance of letters of administration on the estate of the owner, and not having perfected his right of dower, his fee interest therein passed to his heirs at law.

■ ■ In the instant case it is not material just when the interest which Jacob Siekmann acquired in the premises involved in this proceeding vested, following the death of Florine. Under the facts disclosed by this record, the interests of the parties were correctly set forth in the complaint. We find no merit in appellant's contention that the will of Jacob Siekmann was fraudulent as to Elois or any other of his creditors. Under the facts disclosed by this record, we do not believe Jacob can be said to have abandoned his homestead estate in the premises and that appellee is liable to her for twenty-three years rent. The Special Master so found, and his findings were approved

by the Chancellor, and the decree properly dismissed the counterclaim.

■ It is finally insisted that plaintiff is still in possession of the premises and that she is liable to account to defendant for the use of the premises from the date of Jacob's death on February 7, 1961 until the final disposition of this case. The Chancellor agreed with this contention and allowed the defendant $400 rent for the two-year period beginning February 7, 1961 and ending February 7, 1963. In Cheney v. Ricks, 187 Ill 171, 58 NE 234, it is said: (p 173) "The law is well settled that a tenant in common in possession of all the land, but who has not ousted his co-tenant, is liable for rents actually received." Under Powell v. Powell, 247 Ill 432, 93 NE 432, supra, and Goddard v. Landes, 250 Ill 457, 95 NE 477, there was no liability on the part of Jacob Siekmann to pay rent to his son for the interest his son owned in the premises from the time of the death of Florine Siekmann, on March 3, 1938, to the time of Jacob's death on February 7, 1961.

■ Upon the death of Jacob, however, his surviving widow, Evelyn, was not entitled to the exclusive possession of an unassignable homestead which was worth more than $2,500. She did have the right to occupy the premises until her homestead estate was set off to her. While this has not been done, she, as against the owner of an undivided interest in the fee, is not entitled to the exclusive possession of the whole of said premises, without paying or offering to pay a reasonable amount of rent. In Wilson v. Illinois Trust and Sav. Bank, 166 Ill 9, 46 NE 740, it was held that a court of equity, under its general chancery powers had jurisdiction to adjust the respective rights of the heir or devisee, and the party entitled to a homestead. Under the circumstances shown by this

record, the Chancellor correctly found that the plaintiff was chargeable for the use and occupancy of the premises from February 7, 1961 at the rate of $200 per year.

The decree of the Circuit Court of St. Clair County is therefore affirmed.

Decree affirmed.

WRIGHT and REYNOLDS, JJ., concur.